No. 36,010

WILDA FRANCES KNAPP, *Appellant*, v. S. F. HIPES, *Appellee*.

(152 P. 2d 805)

Opinion filed November 4, 1944.

*Walker F. Means,* of Hiawatha, argued the cause for the appellant.

*L. E. Helvern,* of Hiawatha, argued the cause, and *Robert M. Finley,* of Hiawatha, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on two promissory notes which had been assigned to the plaintiff by the payee after their maturity.

The defense was that the maker had been relieved of their payment by a compromise settlement with the payee which he had performed.

Briefly the pertinent facts were these: Defendant Hipes was a tenant farmer in Brown county. He was burdened with debts. The Morrill State Bank held two of his notes, one for $400 and another for $1,312.61. These bore a high rate of interest and both were past due on March 26, 1941, at which time the bank and Hipes made a written agreement of settlement. Its terms were that he was to pay the bank $150 in cash, and he was to sell fourteen shoats, five hogs, eight cows and four calves and deliver their proceeds to the bank, and he was to deliver his share of a wheat crop (estimated at fifty acres) at an elevator in Hiawatha to the account of the bank, but that the harvesting and threshing expense should be deducted from the sale price. The bank's part of this agreement was that it would surrender the notes to Hipes on his performance of the terms outlined above. Hipes paid the agreed $150, and sold his livestock for $382.86 and delivered the proceeds thereof to the bank. These payments were credited on Hipes' notes. Later, after harvest, Hipes delivered the wheat at the elevator to the account of the bank; but at that point Hipes' landlord claimed his statutory lien on the wheat for the nonpayment of the cash rent due for the pasture land on the farm occupied by Hipes. Of course that statutory lien took precedence of any claim the bank had on the wheat. (G. S. 1935, 67-524 *et seq.*) In *Firstenberger v. McBee*, 113 Kan. 110, 213 Pac. 813, it was held:

"All the rent for a farm, including pasture, is a lien on the crops raised thereon by a tenant where the entire tract is leased under one contract for a share of the crops and $5 an acre for the pasture." (Syl. ¶ 1.)

See, also, *Shell v. Guthrie*, 129 Kan. 632, 284 Pac. 420; *Schmitz v. Stockman*, 151 Kan. 891, 894, 101 P. 2d 962.

The satisfaction of the landlord's lien consumed the entire proceeds of the tenant's share of the wheat, and left an aggregate unpaid balance of $1,139.76 on its notes against Hipes.

On the assumption that by the interposition of the landlord's lien which deprived the bank of the proceeds of the wheat the compromise and settlement between Hipes and the bank was ineffective, the bank assigned the Hipes notes to plaintiff and she brought suit thereon. On the issues joined no material dispute of fact arose. The controversy below, as here on appeal, was whether the failure of the bank to get the beneficial proceeds of the wheat constituted a breach of the compromise and settlement between Hipes and the bank.

The trial court held that the compromise agreement had been fully performed, and gave judgment for defendant.

The plaintiff appeals, contending that the compromise agreement with the bank as plaintiff's assignor was vitiated through the fault of Hipes in not paying his cash rent, which failure alone prevented the bank from receiving the proceeds of the wheat. She also urges that the attaching of the landlord's statutory lien for the unpaid rent was not within the contemplation of the bank and Hipes when they made their compromise agreement.

Plaintiff stresses the elementary point that to make an accord effectual there must be satisfaction, and that there could be no satisfaction since the bank was deprived of the wheat delivered at the elevator to its account, that in effect Hipes did not keep his part of the agreement when by his own fault he failed to pay his cash rent, which failure caused the landlord's lien to attach.

There is a specious plausibility to this argument, but we think it is basically untenable. The landlord's lien is a long-standing rule of elementary Kansas law. Almost everybody is aware of it, certainly every country banker. No business man of any prudence will contract for any part of a crop grown by a tenant farmer, without taking the precaution to assure himself that the landlord's claim for rent (like the thresherman's claim for his labor) has either been paid or that satisfactory provision has been made for its payment, so that the crop he contracts for will not be subjected to one of these statutory liens. (*Scully v. Porter,* 57 Kan. 322, 325, 326, 46 Pac. 313; *Maelzer v. Swan,* 75 Kan. 496, 498, 89 Pac. 1037.)

Moreover, at the time of the compromise and settlement the bank knew of Hipes' financial difficulties. It knew he had other indebtednesses than those evidenced by his promissory notes which the bank held and which he could not pay according to their tenor. Under such circumstances it is quite just to say that the bank had notice of circumstances sufficient to put it on inquiry whether the pasture rent might be a lienable claim on the tenant's wheat. (*Maelzer v. Swan,* supra; *Shell v. Guthrie,* supra; *Hayhurst v. Saile,* 130 Kan. 844, 288 Pac. 539.)

It must be held that the compromise agreement should be construed in the light of the statute, and that it was only the net proceeds of Hipes' share of the wheat which the bank was to get. The parties estimated that there was fifty acres of wheat. In fact there was about seventy acres of it, and if the crop had been bountiful and

the price had been good, mayhap there would have been sufficient money out of its sale not only to satisfy the landlord's lien, but to pay the bank also. That the crop and its proceeds did not do so, and left nothing for the bank after the landlord's lien was satisfied did not vitiate the agreement.

The judgment is affirmed.