**BANK OF DANVILLE, Movant,**

v.

**FARMERS NATIONAL BANK OF DAN-
VILLE, KENTUCKY, Respondent.**

Supreme Court of Kentucky.

June 24, 1980.

Rehearing Denied Sept. 2, 1980.

James William Barnett, Sheehan, Barnett & Hays, Danville, for movant.

Nelson D. Rodes, Jr., Danville, for respondent.

STERNBERG, Justice.

This action involves the priority of a security agreement and financing statement of the Bank of Danville and Farmers National Bank of Danville. Hereafter, for brevity, we will refer to the Bank of Danville as the "Bank" and to Farmers National Bank of Danville as "Farmers."

Garnett Baugh and Gertrude Baugh, his wife, throughout a period of several years had executed to the Bank four separate evidences of indebtedness and were in default on each of them. The unpaid balance on the combined indebtedness was $44,-275.11. One of the evidences of indebtedness, being the document under consideration, is a security agreement in the original sum of $29,778.72. It was dated February 6, 1975, and was recorded in the office of the County Court Clerk of Boyle County, Kentucky, on February 19, 1975. The property covered by the security agreement consists of cattle, farm machinery, and the 1975 tobacco and barley crops. The collateral was described in general terms. On the security agreement the Baughs' address is stated to be "315 Forrest Avenue, Danville, Kentucky 40422." Numerical paragraph 3 of the security agreement provided that "The Collateral will be kept at the

address indicated in the heading, otherwise will be located at: on farm of Dale Wilson on Lancaster Road, 4 miles from Danville, Boyle County, Kentucky. * * * "

On April 8, 1975, the Baughs executed a financing statement and a security agreement to Farmers. The financing statement was taken as evidence of additional collateral for a loan in existence at the time in the principal sum of $9520. On the same date that the financing statement was executed, it was filed in the office of the County Court Clerk of Boyle County, Kentucky. The security agreement was never filed for record. The collateral is described as "one-half interest in 48,900 lb. tobacco to be grown on Kenneth Bailey (formerly Dale Wilson) farm Lancaster Road, Danville, Ky. 40422." Each of the banks is claiming priority to the proceeds of the sale of the 1975 tobacco crop. By certified mail Farmers notified all three of the tobacco warehouses in Danville that it had a mortgage on the tobacco crop and directed that payment for the sale be made by check payable to Garnett Baugh, Dale Wilson and Farmers National Bank. As a matter of fact, there was no mortgage. There was a financing statement and a security agreement, but no mortgage. The Bank did not write a letter to any of the three warehouses notifying them of its recorded lien. The Bank depended on Baugh to receive the money from the proceeds of the sale of his tobacco and, on his own volition, to pay their account. Farmers received four payments from the Burley Tobacco Warehouse for the sale of the subject tobacco crop which totaled the sum of $22,619.77. Disbursement was made by Farmers without checking the records in the county clerk's office to ascertain whether there were any recorded encumbrances and without inquiring of anyone of the existence of any other claim.

Farmers argues that by reason of the failure of the Bank to properly describe in its security agreement the real estate on which the tobacco was to be grown, the security agreement is not enforceable. The statutes on which Farmers predicates its claim are KRS 355.9–203(1)(b) and KRS 355.9–402(1), and so far as applicable, they provide as follows:

"355.9–203. Enforceability of secured interest—Proceeds, formal requisites.— (1) Subject to the provisions of KRS 355.-4–208 on the security interest of a collecting bank and KRS 355.9–113 on a security interest arising under the article on sales, a security interest is not enforceable against the debtor or third parties unless

*   *   *   *   *   *

(b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops * * * a description of the land concerned. * * "

"355.9–402. Formal requisites of financing statement—Amendments.—(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown * * * the statement must also contain a description of the real estate concerned. * * * "

On May 3, 1977, the trial court entered an "Opinion and Order" in which, among other issues, it decided that (1) the security agreement held by the Bank on the 1975 tobacco crop of Garnett Baugh did not properly describe the land concerned, therefore was not valid, and (2) Farmers had no authority to distribute the proceeds of the sale which exceeded that which it paid to itself in satisfaction of Baugh's indebtedness to it. On March 28, 1978, the trial court entered a new "Opinion and Order" in which it changed its former holding and held that (1) the security interest of the Bank was adequate with respect to the crops and location of the farm on which they were to be

grown, and (2) Farmers had no authority to distribute the proceeds of the sale which exceeded that which it paid to itself in satisfaction of Baugh's indebtedness to it. This part of the court's new "Opinion and Order" is the same as its counterpart in the May 3, 1977, "Opinion and Order."

On appeal to the Court of Appeals of Kentucky, the judgment of the trial court was reversed. On February 7, 1980, this court granted discretionary review. Three issues are presented on this appeal.

I

Did the security agreement, dated February 6, 1975, from Garnett Baugh and Gertrude Baugh to Bank of Danville, which was filed on February 19, 1975, in the office of the Clerk of the Boyle County Court, create a valid and perfected security interest in Garnett Baugh's interest in the 1975 tobacco crop grown on the farm of Dale Wilson on the Lancaster Road, four miles from Danville, in Boyle County, Kentucky?

The first issue challenges the sufficiency of the description of the real estate concerned. The res is the crops. The security agreement must contain a description of the land on which they are grown. The challenged security agreement describes the collateral as: "Also the 1975 tobacco crop and 80 acres of Barley." The collateral will be kept at Baugh's mailing address, heretofore set out, or it will be located on what is known as the Dale Wilson farm. For what purpose is the filing of a security agreement made? This inquiry, even to a first-year law student, would be an embarrassment. It gives notice to the world that the Bank claims an interest in Baugh's 1975 tobacco crop, which is located at and grown on the Dale Wilson farm. Not only a Dale Wilson farm that may be located at some point and on some road in Boyle County, Kentucky, other than Lancaster Road, but it refers to the Dale Wilson farm located on Lancaster Road, four miles from Danville, Kentucky. It is not stated nor argued to be nor inferred that Dale Wilson was at the time the security agreement or financing statement was executed the owner of the farm, merely that for some reason or other the property had become known as the Dale Wilson farm. It may have been, and the record seems to reflect, that at one time Dale Wilson did own the subject land but had sold it prior to the growing of the 1975 crops.

We gather from the brief submitted by Farmers that only a "metes and bounds" description is adequate to satisfy the statutory requirements. A statement in such words that will enable anyone searching the records in the county court clerk's office to locate the whereabouts of the farm where the crops are to be grown is sufficient. Lancaster Road—4 miles from Danville, Kentucky—known as Dale Wilson farm—is such a description. How could anyone not locate the subject property? As to a description of the land concerned, or as to a description of the land on which the collateral would be kept, or as to a description of the land where the collateral may be located permits a liberal construction to meet the language of the statute.

Farmers' conduct in this proceeding is best described as the pot calling the kettle black. In the security agreement executed by Baugh to Farmers on April 8, 1975, the collateral is described as "one-half interest in 48,900 lb. tobacco to be grown on Kenneth Bailey (formerly Dale Wilson) farm, Lancaster Road, Danville, Ky. 40422." In the financing statement executed by Baugh to Farmers, the property is described as "One-half (½) interest in 48,900 lb. tobacco grown on the Kenneth Bailey farm (formerly Dale Wilson farm, and also known as the John C. Robinson farm) Lancaster Road, Danville, Boyle County, Kentucky." Even the letter of notification dated November 21, 1975, from Farmers to the Burley Tobacco Warehouse refers to "under contract with Dale Wilson and grown on the Dale Wilson Farm (now Kenneth Bailey) located on Lancaster Road, Danville, Kentucky."

■ The description contemplated by the statutes is not required to be by metes and bounds. It does not have to be meticulous.

It is only required to be in such words and terms that it can be readily located. In *Ken-Tex Exploration Co. v. Conner*, Ky., 251 S.W.2d 280 (1952), this court stated:

"Courts are liberal in construing descriptions in deeds with a view of determining whether a description is sufficiently definite and certain to identify the land and make the instrument operate as a conveyance. They apply the maxim, 'That is certain which can be made certain,' * * *"

The facts in the *Ken-Tex* case are not on all fours with the present action; however, the proposition of law therein enunciated is applicable to the case at bar.

■ We are of the opinion that the description of the land concerned in the Bank's instrument is adequate and that the Court of Appeals erred in holding otherwise.

## II

Did the Boyle Circuit Court have authority to reconsider its Opinion and Order dated May 3, 1977?

This action was first commenced by the Bank filing a complaint against Farmers and Mr. and Mrs. Baugh in which the Bank sought a judgment against the Baughs for its unpaid indebtedness, sought to subordinate the claim of Farmers to its claim, and sought to apply the proceeds of the sale of the subject tobacco crop to its indebtedness. By amended complaint the Bank brought in eleven new defendants, making a total of fourteen defendants involved in this litigation. In addition to the issues between the Bank and Farmers, the Baughs filed an answer demanding that the plaintiff's complaint be dismissed, making an issue between the Bank and the Baughs. Edwin Freeman, who had been made a defendant, demanded that the complaint of the Bank be dismissed, making an issue between the Bank and Freeman. Whitehouse-Humphrey Farm Machinery Co. demanded that it be adjudged a first and prior lien to that of the Bank. International Harvester Credit Corp. disclaimed any interest as a secured party. International Harvester Company disclaimed any interest as a secured party. Dale Wilson placed in issue the Bank's complaint. Garnett and Gertrude Baugh placed in issue the claim of Farmers. The Baughs made an issue with Whitehouse-Humphrey Farm Machinery Co. and asked that its claim be dismissed and held for naught. The Sperry Rand Corporation entered its appearance and disclaimed any interest in any personalty belonging to Garnett Baugh. The J. I. Case Credit Corp. entered its appearance and disclaimed any interest in any personalty belonging to Garnett Baugh. By answer and counterclaim, Garnett Baugh sought recovery against Dale Wilson. It is evident that the action contained multiple parties. As to whether there were multiple claims, the record reflects the following:

| | |
|---|---|
| 7/27/76 | Judgment entered ordering sale of farm machinery. |
| 5/3/77 | First Opinion and Order entered. |
| 5/10/77 | Bank's motion to make Opinion and Order of May 3, 1977, final by reciting that there is no just reason for delay and that, pursuant to CR 54.02, the Opinion and Order shall be final. |
| 5/10/77 | Farmers filed motion to set aside portion of the May 3, 1977, Opinion and Order. |
| 5/17/77 | Motion of Dale Wilson to amend Opinion and Order of May 3, 1977, and make findings of fact. |
| 11/1/77 | Motion of Bank to enter an order pursuant to CR 54.02. |
| 3/28/78 | New Opinion and Order entered by court which determined only the issue as to validity of the Bank's security agreement, the proper distribution of the proceeds of the sale of the 1975 tobacco crop, and that, pursuant to CR 54.02, it was a final order and there was no just cause for delay. |
| | Other issues made by the pleadings were not reached. |
| 3/31/78 | Motion by Bank to reconsider and set aside Opinion and Order of March 28, 1978. |
| 4/4/78 | Motion by Dale Wilson to amend Opinions and Orders of May 3, 1977, and March 28, 1978. |
| 10/5/78 | Judgment of the Bank against Baugh fixing amount of indebtedness, providing that it is a final judgment on multiple claims involving multiple parties, and declaring it to be a final judgment. |

Farmers contends that the trial court was without authority to reconsider and change its Opinion and Order of May 3, 1977. The case, as has been shown, contained multiple claims raised by multiple parties. CR 54.02 provides:

> ¹ "54.02—Judgment Upon Multiple Claims or Involving Multiple Parties. (1) When more than one . . . claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims."

■ The May 3, 1977, Opinion and Order did not recite whether there were multiple claims, whether there were multiple parties, or whether there was no just reason for delay; consequently, the Opinion and Order was interlocutory and subject to change by the trial court at any time prior to the final adjudication. The trial court was not in error in reconsidering its action and changing the Opinion and Order of May 3, 1977, and entering its Opinion and Order of March 28, 1978.

### III

Did the court properly adjudge that the Bank of Danville should recover from Farmers National Bank the sum of $22,619.77, being the entire proceeds obtained and disbursed by the Farmers National Bank from the proceeds of Garnett Baugh's interest in the 1975 tobacco crop?

■ Pursuant to the demand of Farmers, the tobacco warehouse paid to it the sum of $22,619.77, representing the sale of Baugh's 1975 tobacco crop. Farmers paid itself the amount of money owed to it by Baugh in the sum of $8,741.34. The remainder of $13,878.43 was distributed by Farmers to Baugh and some of his other creditors, not including the Bank. At this time Baugh owed the Bank in excess of the total sum of money which Farmers received from the tobacco warehouse. The claim of Farmers being inferior to the claim of the Bank, it was not entitled to participate in the proceeds of the sale until the Bank had been fully paid. Farmers was found by the trial court to be liable for the $13,878.43 which it had distributed to Baugh and his creditors. The trial court found that this distribution was made without the consent of Baugh, which is borne out by the proof. Consequently, Farmers must stand liable to the Bank for this erroneous distribution. Farmers, therefore, will not only be liable for the $13,878.43 but also for the $8,741.34 which it paid to itself.

The decision of the Court of Appeals is reversed. The judgment of the Boyle Circuit Court dated October 5, 1978, is affirmed.

All concur except LUKOWSKY, J., who dissents and files herewith a dissenting opinion.

LUKOWSKY, Justice, dissenting.

The question of the enforceability of Bank's secured interest is not answered by a determination that the description of real estate is sufficient to identify the land. Rather, the crucial determination to be made is whether the security agreement/financing statement contains the information required by statute. The correct determination of the former is not necessarily determinative of the latter.

The majority quite correctly cite and rely on KRS 355.9–203(1)(b) and KRS 355.9–402(1), but they conveniently ignore KRS 355.9–402(4) which provides in part:

> "A form substantially as follows is sufficient to comply with subsection (1):
>
> .        .        .        .        .

2. (If collateral is crops) the above described crops are growing or are to be grown on:

(Describe Real Estate) _____."

This language makes it crystal clear that a secured interest in crops is unenforceable unless a description is given of the real estate on which they are *growing* or *to be grown* in the security agreement/financing statement.

That information was not contained in the security agreement/financing statement in this case. The most that can be gleaned from the document here is that all the collateral (animals, machinery, motor vehicles and crops) would be either *kept* at Baugh's address or *located* "at: on farm of Dale Wilson."

*Keep* and *locate* simply are not synonyms for *grow*. Crops may be grown one place and kept or located another. The *sine qua non* of validity is an unequivocal statement of the place of growth, not an inference to be twisted from an ambiguous reference to keeping or locating.

Because the security agreement/financing statement here does not give the location at which the crops are *growing* or *are to be grown*, as required by statute, I would affirm the decision of the Court of Appeals and reverse the judgment of the Boyle Circuit Court.