**In re Charles Dewey ROBERTS a/k/a Charles D. Roberts, Bertha Mae Roberts a/k/a Bertha M. Roberts, Debtors.**

**Larry E. SCHNEIDER, Trustee, Plaintiff,**

v.

**Gary RAY d/b/a Raken Land and Cattle Co.; Talmage State Bank, Defendants.**

**Bankruptcy No. 83–40765.**
**Adv. No. 83–0365.**

United States Bankruptcy Court,
D. Kansas.

Feb. 24, 1984.

Larry E. Schneider, Topeka, Kan., pro se.

George W. Yarnevich of Kennedy, Berkley, Yarnevich & Williamson, Chtd., Salina, Kan., for Talmage State Bank.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, the trustee seeks to avoid a security interest granted by the debtors to the Talmage State Bank pursuant to 11 U.S.C. § 544.

The issues presented for determination are:

1. Does the Talmage State Bank have a perfected security interest in the stored grain in question.

2. Does the trustee have priority over Talmage State Bank's lien by virtue of an avoided landlord's lien and 11 U.S.C. § 551.

Briefs and a stipulation have been filed and the Court is prepared to rule.

## FINDINGS OF FACT

Talmage State Bank (TSB) has filed a proof of secured claim in this chapter 7 proceeding. Attached to its proof of claim is a security agreement granting a security interest in crops, specifying 225 acres of growing wheat. The security agreement does not contain a description of real estate on which any crops were growing.

Also attached to the proof of claim is a financing statement and continuation statement filed with the Clay County, Kansas Register of Deeds. The financing and continuation statements do not contain a description of the real estate on which any crops were growing. The security agreement grants a security interest in, and the financing statement perfects a security interest in "all farm products." The parties agree the debtors owned the grain when this chapter 7 proceeding was commenced and there are no allegations concerning warehouse receipts.

At issue is 5,000 bushels of harvested wheat stored at Oakhill, Kansas worth approximately $17,500.00. The wheat was harvested and stored prior to commencement of this chapter 7 case.

The trustee has avoided a landlord's statutory lien for rent in the amount of $3,500.00, and now argues that TSB has an unperfected security interest in the wheat, by virtue of TSB's failure to include in the financing statement any description of the real estate on which the crops were growing.

The trustee further argues that if TSB has a lien, the priority of the avoided statutory landlord's lien is preserved for the benefit of the bankruptcy estate.

## CONCLUSIONS OF LAW

In the instant case, TSB was granted a security interest in growing crops and products of the growing crops. The crops in question had been severed and stored in a warehouse prior to the date the debtors filed their chapter 7 petition. The parties have argued the issue is perfection of a security interest in *growing* crops. The severed crops, of course, were not growing. The Court will address the *growing* crop issue and then proceed to address the two pertinent issues not raised by the parties but nonetheless necessary to a resolution of the priority dispute.

### 1. Growing Crops

In order to perfect a security interest in growing crops, a financing statement (UCC–1) "must ... contain a description of the real estate concerned." K.S.A. § 84–9–402(1) (1983). The description of the real estate, however, does not have to be a legal description, and "any description of ... real estate is sufficient whether or not it is specific if it reasonably identifies what is described." K.S.A. § 84–9–110 (1983).

■ A real estate description in connection with growing crops can be sufficient, even if it does not enable the UCC–1 to fit into the real estate search system to be readily found by a real estate searcher:

An important distinction must be drawn ... between the function of the description of land in reference to crops and its function in the other cases mentioned [e.g., fixtures, timber, minerals]. For crops it is merely part of the description of the crops concerned, and the security interest in crops is a Code security interest, like the pre-Code "crop mortgage" which was a *chattel* mortgage. In contrast, in the other cases mentioned the function of the description of land is to have the financing statement filed in the county where the land is situated and in the realty records, as distinguished from the chattel records.

Official Comment 1 to 9–402. Cf. K.S.A. § 84–9–402(5) (1983).

In keeping with the spirit of the official comments to 9–402 and recognizing the different functions of crop filings and other

real estate filings, most courts have held that a financing statement real estate description in connection with growing crops is sufficient if it contains:

1. the name of the land owner
2. the approximate number of acres of the farm
3. the county of the location of the land
4. the approximate distance and direction of the farm from the nearest town or city.

See, e.g., *United States v. Oakley*, 483 F.Supp. 762, 28 UCC Rep. 199 (E.D.Ark. 1980); *United States v. Smith*, 22 UCC Rep. 502 (N.D.Miss.1977); *United States v. Big Z Warehouse*, 311 F.Supp. 283, 7 UCC Rep. 1061 (S.D.Ga.1970); *In Re Lovelady*, 21 B.R. 182, 34 UCC Rep. 713 (Bkrtcy.D. Or.1982); *Bank of Danville v. Farmers Nat. Bank*, 602 S.W.2d 160, 29 UCC Rep. 1020 (Ky.1980). See also B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 8.5[1][a] (1980). Although two Arkansas cases would seem to require a more detailed description to be sufficient, see *Peoples' Bank v. Pioneer Food Indus., Inc.*, 253 Ark. 277, 486 S.W.2d 24, 11 UCC Rep. 651 (1972); *Piggott State Bank v. Pollard Gin Co.*, 243 Ark. 159, 419 S.W.2d 120, 4 UCC Rep. 785 (1967), the extent of these holdings must be questioned in light of a decision by the Arkansas federal district court which stated: "[T]he description need not be such as would enable a stranger to select the property .... [A] description is sufficient which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property." *United States v. Oakley*, 483 F.Supp. 762, 764, 28 UCC Rep. 199, 202 (E.D.Ark.1980). See also *Bank of Jasper v. Johnson (In Re Johnson)*, 21 B.R. 484, 34 UCC Rep. 708 (Bkrtcy.W.D.Mo.1982).

The Kansas Supreme Court has also addressed this issue. In *Chanute Prod. Credit Assoc. v. Weir Grain & Supply, Inc.*, 210 Kan. 181, 499 P.2d 517, 10 UCC Rep. 1351 (1972), a creditor with a security interest in crops filed the following financing statement:

Crops: Annual and perennial crops of whatever kind and description which are now growing or are hereafter planted, grown, and produced on land owned or leased by debtor in Cherokee County, Kansas.

The Court held that the financing statement was inadequate stating that even though § 9–110 and § 9–402(1) contemplate,

something less than a legal description ... it is evident ... that some description be given ...

210 Kan. at 182, 499 P.2d at 518, 10 UCC Rep. at 1352.

Where, as in the instant case, the financing statement contains absolutely no reference to or description of the land on which the crops were to be grown, the courts and commentators agree the creditor has failed to perfect its security interest in crops. See, e.g., *In Re Schwab*, 613 F.2d 1279, 28 UCC Rep. 1123 (5th Cir.1980); *First National Bank of Atoka v. Calvin Pickle Co.*, 516 P.2d 265, 12 UCC Rep. 943 (Okl.1973); *Scott State Bank v. Tabor Grain Co.*, 109 Ill.App.3d 858, 65 Ill.Dec. 381, 441 N.E.2d 173, 34 UCC Rep. 1759 (1982); *In Re Mount*, 5 UCC Rep. 653 (Bankr.S.D.Ohio 1968). Clearly,

[t]otal failure to describe real estate in a crop transaction is not a de minimus error under § 9–402.

B. Clark, supra, ¶ 8.5[1][a]. at 8–48.

TSB argues that the:

security interest in crops of Charles Dewey Roberts was filed in the chattel records of Clay County so apparently the description of crops of the debtor was sufficient to have the security interest filed in the chattel records in accordance with the statutory intent of requiring such description.

(TSB brief at pg. 3). This argument is without merit. The financing statement was filed in the county "chattel records" because that is where TSB filed it, not because of any determination by the Register of Deeds that it was the proper place to file. TSB's entire argument is premised on

the ability of a searching creditor to contact TSB concerning encumbered crops upon finding the financing statement in the records. This argument misses the point. *Some* description is required. "Complete omission of any description of the real estate is a major error." J. White & R. Summers, Handbook on the Law Under the Uniform Commercial Code, § 23–16 at 964 (2nd Ed.1980). There must be *some* description before the creditor can argue the description was not seriously misleading. *In Re Wood,* 33 B.R. 320, 37 UCC Rep. 627, 632–33 (Bkrtcy.D.Idaho 1983).

If these were growing crops, the Court would hold that the absence of any real estate description is fatal to TSB and TSB's security interest was unperfected. Therefore, pursuant to K.S.A. § 84–9–301, and 11 U.S.C. § 544, the trustee's interest in the wheat would be superior to TSB's interest, and TSB would lose in toto. As indicated, however, the issue is not perfection of a lien in growing crops, but rather in severed crops.

### 2. Perfection of Lien in Severed Crops

Grant Gilmore states:

The term "crops" is nowhere defined in the code. It appears, however, to have been used as a term of broad reference to anything that is vegetable, as distinguished from animal or mineral.

II G. Gilmore, Security Interests in property § 32.4, at 863 (1965). Pursuant to K.S.A. § 84–9–109(3), "the term farm products includes ... crops ... as well as the product of [crops] ... not subjected to a manufacturing operation." Id. § 26.6 at 694. In addition, the crops or products must be in the possession of the debtor engaged in farming operations. K.S.A. § 84–9–109(3). The UCC mentions the terms "crops", "growing crops" and "farm products" in various sections. Sometimes, only "crops" are mentioned. See, e.g., K.S.A. § 84–9–109(3). Sometimes "growing crops" are mentioned. See, e.g., K.S.A. §§ 84–2–105(1); 2–107(2); 9–203(1)(a); 9–402(1). Sometimes, both "crops" and "growing crops" are mentioned. See

K.S.A. § 84–9–312(2). Sometimes "farm products" are mentioned. See, e.g., K.S.A. §§ 84–9–307(1); 9–301(1), (3); 9–401(1)(a).

Peter F. Coogan has stated:

I am not aware of any other comment on the question of whether under article 9 a growing crop ceases to be a crop when it is harvested .... [A] secured party who takes a security interest in a growing crop should include "products" on the chance that the word "crops" did not cover his collateral after harvesting .... [T]he secured party ... may find it advisable to file both on the theory that he is getting a security interest in a part of the farmer's inventory which may not be crops. Article 9 is not entirely consistent in sometimes dealing with crops and sometimes dealing with the broader category of farm products. § 9–307, dealing with rights of buyers, use the term "farm products." The second alternative of § 9–401(1) speaks both of crops and farm products. *However, an extra filing may be necessary when the collateral is crops: but not when it is other farm products. Section 9–402 requires a description of the real estate only with respect to crops growing of* [sic] *to be growing.*

1c P. Coogan, W. Hogan & D. Vogts, Bender's Uniform Commercial Code Service-Secured Transactions Under the UCC § 27.-02[6] at 2762, n. 42a (1983) (emphasis added). See also B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 8.5[1][a], at 8–47 (1980); Id. 1983 Supp. No. 2, at 5.8–11, note 137.2 and accompanying text; Meyer, Potential Problems Connected with the Use of "Crops" as Collateral for an Article 9 Security Interest, 1981–82 Agri.L.J. 115, 137 [hereinafter Meyer, Potential Problems]; Meyer, "Crops" as Collateral for an Article 9 Security Interest and Related Problems, 15 U.C.C.L.J. 3, 18 (1982) [hereinafter Meyer, Crops].

As alluded to by the commentators and as delineated in the UCC, only a security interest in "growing crops" must be perfected by a financing statement containing

a description of the real estate. It would appear that a security interest in other subcategories of "farm products," such as severed crops, stored crops, or products of crops in their unmanufactured state, is, by negative implication, perfected without inclusion of a real estate description.

■ The Court holds that severed crops are not "growing crops", but rather are simply another subcategory of the UCC's generic collateral category of farm products, if in the farm debtor's possession. Because severed crops are not growing crops, the real estate description requirement of K.S.A. § 84–9–402(1) is inapplicable, and in order to perfect a security interest in the severed and stored crop a financing statement does not have to contain a description of the real estate.

The Court must next determine if the stored crops in question are "farm products." The parties do not contest that the debtors were engaged in farming operation, and there is little question that wheat is a crop, and therefore harvested and stored wheat can also be a farm product. See Meyer, Potential Problems, supra at 117. The problem occurs when wheat is harvested and stored in an elevator not on the farm debtor's farm. Is the farm debtor still in possession?

The Court has not been able to locate any cases holding that stored grain is not in the farmer's "possession" within the meaning of K.S.A. § 84–9–109(3). But see *United States v. Hext*, 444 F.2d 804, 9 UCC Rep. 321 (5th Cir.1971), where in dicta the court stated that where a farmer who grew cotton, had it ginned by his wholly owned gin company, and then transferred the cotton to a warehouse pending sale, the cotton might not be in possession of the farmer, and thus not a farm product. 9 UCC Rep. at 335, n. 30.

"Possession" is not defined in the UCC. The Court's ensuing discussion is drawn from University of Kansas Professor Keith Meyer's two previously cited articles: Potential Problems, supra at 118–19; and Meyer, Crops, supra at 6–9.

■ First, the Court believes K.S.A. § 84–9–205 ("allowing the debtor significant control over the property ...." Meyer, Crops, supra at 7) reflects an intent to broadly construe "possession." Second, upon placing the grain in a warehouse, the farmer usually receives a weight or scale ticket, and a warehouse receipt. K.S.A. § 84–9–305, allowing a secured party to perfect a security interest in goods covered by non-negotiable warehouse receipts by notifying a bailee in possession, also indicates some intent that possession can be constructive. The Court believes "that non-negotiable warehouse receipts in the hands of the farmer should be sufficient to be possession for the purposes of the definition of " 'farm products.' " Meyer, Potential Problems, supra at 118. Third, if a negotiable warehouse receipt is issued, the receipt represents the actual ownership of the grain, and the receipt in the possession of the farmer is tantamount to possession of the grain by the farmer. See K.S.A. § 84–9–304, Official Comment 2. Finally, Professor Gilmore stated:

> Goods cease to be "farm products" when they are subjected to any manufacturing operation ... or when they move from the *possession and ownership* of a farmer to that of a non-farmer (canner, cooperative, etc.) ...
>
> "Farm products" are in effect a farmer's inventory ... although there is no "held for sale" language in the definition, it is in the highest degree unlikely that farm products not destined for sale will ever show up as collateral for loans.

I.G. Gilmore, Security Interest in Personal Property, § 12.3 at 374. Clearly, Professor Gilmore did not contemplate that grain lost its farm product classification when stored by a farmer that still owned the grain. Based on these considerations, the Court holds that grain owned and stored by a farmer, in which any negotiable or non-negotiable warehouse receipts are in the farmers possession, is "possessed" by the farmer and is a "farm product" within the meaning of K.S.A. § 84–9–109(3).

■ Since the parties agree in their briefs that the debtor owned the grain in question at the time. this chapter 7 proceeding was instituted, and in the absence of an allegation that any warehouse receipts are possessed by someone other than the debtor, the Court holds the 5,000 bushels of wheat in question are farm products. TSB was granted a security interest in and perfected a security interest in "all farm products." Although a real estate description was omitted in the UCC–1 financing statement, when the crops were harvested and thus ceased to be "growing crops" the real estate description requirement of K.S.A. § 84–9–402(1) became inapplicable, and TSB's formerly unperfected security interest in "growing crops" became a perfected security interest in farm products ... the severed, stored grain. Though this gap in perfection could be a problem under certain circumstances, those circumstances do not exist here.

### 3. Landlord's Lien

■ The trustee has avoided a landlord's lien pursuant to K.S.A. § 58–2524 (1976). Landlord's liens, however, are not entitled to super priority under K.S.A. § 84–9–310, because K.S.A. § 84–9–104(b) specifically excludes landlord's liens from applicability to the provisions of article 9 of the UCC. See B. Clark, supra ¶ 2.7[2] at 3–36.

■ Having avoided the landlord's lien, however, the trustee may preserve the priority of the lien pursuant to 11 U.S.C. § 551. Under the holdings of *Schmitz v. Stockman*, 151 Kan. 891, 894, 101 P.2d 962 (1940), and *Knapp v. Hipes*, 159 Kan. 94, 152 P.2d 805 (1944), a landlord's lien is superior to TSB's security interest. See also 52 C.J.S. Landlord and Tenant § 633 (1968). TSB does not argue that these cases hold otherwise, but rather argues that the UCC overrules these cases.

The Court cannot agree. Kan.G.S.A. § 67–524, the statute under which these cases were decided, is identical to the present K.S.A. § 58–2524. K.S.A. § 58–2524 was not amended by or after the adoption of the UCC. The cases construing landlord's liens have not been overruled. The Court sees no conflict with the UCC since the UCC expressly does not apply to landlord liens. Therefore, pursuant to 11 U.S.C. § 551, the trustee preserves this landlord lien's priority to defeat TSB's perfected security interest to the extent rent was due. *Eresch v. Quakenbush*, 147 Kan. 311, 315, 76 P.2d 820, 823 (1938).

The landlord's lien was for rent in the amount of $3,500.00. The Court holds that out of the proceeds from the sale of the wheat grain, the trustee is entitled to $3,500.00 pursuant to K.S.A. § 58–2524 and 11 U.S.C. § 551. TSB is entitled to the remaining proceeds. Each parties' net share of the proceeds is subject to their respective pro rata share of costs and expenses.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.