**In the Matter of William P. NAVE and Anne B. Nave, Debtors.**

**BANK ONE, DAYTON, Movant,**

v.

**William P. NAVE and Anne B. Nave, Respondents.**

**Bankruptcy No. 3–86–00187.**
**Adv. No. Contested Matter (A).**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Nov. 10, 1986.

Ronald S. Pretekin, Dayton, Ohio, for movant, Bank One.

Robert H. Welch, II, Milford, Ohio, for debtors/respondents.

## DECISION DETERMINING SECURED CLAIM OF BANK ONE

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(K), in which the movant/creditor, Bank One, Dayton, NA, hereinafter Bank One, claims a perfected security interest in the proceeds from the sale of certain corn grown by the respondents/debtors-in-possession, hereinafter, Naves.

### I. Procedural Posture

This matter was before the court in connection with a motion by Bank One requesting an order to prohibit the use of cash collateral, for adequate protection, or alternatively, for relief from the stay and for appointment of a trustee (Doc. 10). Bank One also filed a separate Motion To Authorize Application Of Funds To The Debt Due Bank One (Doc. 33). The parties filed an entry that resolved all issues in both motions, except the determination of Bank One's claim to the proceeds arising from the sale of certain corn which was grown, harvested, stored and subsequently sold by the Naves. The agreed entry provided that these proceeds, thirteen thousand, two hundred fifty-four dollars and no cents ($13,254.00), "are to be deposited in an interest bearing savings account at Bank One and the question of whether or not Bank One has a lien upon the proceeds is to be argued to the court." (Doc. 37, page 2).

### II. Facts

The Naves entered into four (4) separate security agreements with Winters National Bank and Trust Company, Dayton, and two additional security agreements with Bank One, the successor in interest to Winters National Bank and Trust Company. The first security agreement signed February 5, 1982 granted a security interest in "All grain and farm products now owned and/or hereafter acquired and all proceeds arising therefrom; ..." (Doc. 41, Ex. G) The second agreement entered into on February 26, 1982, granted an interest in "All grain (corn and soybeans) and farm products now owned and/or hereafter acquired and all proceeds arising therefrom; ..." (Doc. 41, Ex. H) On July 26, 1982, a third agreement granted an interest in "All grain and farm products now owned and/or hereafter acquired and all proceeds arising therefrom; ..." (Doc. 41, Ex. I) A fourth security agreement on January 13, 1983 granted an interest in "... All grain now owned and hereafter acquired." (Doc. 41, Ex. J) On April 16, 1984, in a fifth security agreement, the Naves granted a security interest in "... All crops, both growing and to be grown." (Doc. 41, Ex. K) The final security agreement between Bank One and the Naves, dated July 18, 1984, granted an interest in "... (2) All inventories including but not limited to grain, hay, and silage now owned and hereafter acquired." (Doc. 41, Ex. M)

The financing statements filed in connection with each security agreement recited language corresponding to that in each agreement. (Doc. 41, Ex. N–Q) None of the financing statements or security agreements included a description of the land on which the crops were grown. The parties stipulated that Bank One did not have a perfected security interest in the debtors' growing crops because of the omission of such a description. (Doc. 41, Item 3). *See also In re Herbolsheimer*, 63 B.R. 118, 119–120 (Bankr.E.D.Mich.1985).

### III. Issues Presented

(1) Does a lender's failure to perfect a security interest in growing crops, as a result of not recording an appropriate description of the land on which the crops will be grown, bar that lender from obtaining a perfected security interest in those same crops when they are harvested prior to the filing of a debtor-in-possession's Chapter 11 Bankruptcy; and, (2) if the lender's security interest is perfected in the harvested crops as farm products, will the debtors' loss of physical possession of the crops by storage of them change the character of

the crops to inventory and defeat the perfected security interest in farm products?

## IV. Arguments of the Parties

Bank One claims in its memorandum (Doc. 40) that it has a perfected security interest in the proceeds from the sale of the corn grown by the Naves and harvested by them prior to the January 24, 1986 filing of their Chapter 11 case. The harvested corn was stored at the Parish Coal and Feed Company, Springfield, Ohio and sold to a third party after the filing of their Chapter 11 case.

Although Bank One acknowledges that it did not have a perfected security interest in the growing corn, it argues that it did have a perfected security interest in the corn once it was harvested. Bank One contends that at the point of harvest, the corn became a farm product, a special category of goods (Ohio Rev.Code § 1309.07). Bank One's position is that from the point of harvest, the corn was a farm product subject to its security interest because the February 5, 1982 security agreement covered "All grain and farm products now owned and or hereafter acquired and all proceeds arising therefrom ..." Bank One asserts that the financing statement filed in connection with this security agreement perfected its interest in the corn which was no longer growing.

In the alternative, Bank One argues that even if the corn ceased to be a farm product because it left the Naves' physical possession for storage at the Parish Coal and Feed Company, the corn would then be inventory and as such the Bank's lien on inventory would continue to provide the Bank with a security interest in the corn.

The Naves contend in their reply memorandum (Doc. 49) that the bank did not have a perfected security interest in the grain as an after-acquired farm product. They argue that after-acquired property cannot be covered by a security agreement unless a security interest first attaches to the original property. The debtors reason that since Bank One's security interest did not attach to the grain when it was growing, because a description of the land on which the corn was grown was not included in any security agreement or financing statement, the bank cannot have a security interest in the harvested corn or the proceeds from the sale of the corn.

The Naves further argue that the Bank's claim that the corn could be considered inventory is incorrect since corn would not lose its character as a farm product merely by being stored provided it remained in possession of one engaged in farming operations and did not become subjected to a manufacturing process.

## V. Opinion

In this case, Bank One concedes that it did not have a perfected security interest in the corn during the time it was a growing crop. Although the various security agreements of the parties (Doc. 41) attempted to cover "All grain ... now owned ...," (Doc. 41, Ex. G) "All crops, both growing and to be grown ..." (Doc. 41, Ex. K) and "All inventories including but not limited to grain ...," (Doc. 41, Ex. M), none of these agreements met the specific requirement of Ohio Rev. Code § 1309.14(A)(1)(Appendix 1) that a security agreement covering growing crops or crops to be grown must include a description of the land upon which the crops are to be grown. (Appendix 1) Likewise, Ohio Rev.Code § 1309.39(E) (Appendix 2) requires that under such circumstances, the financing statement must also include a description of the land on which the crops are to be grown.

■ However, once the crop is harvested, a different question is presented. Ohio Rev. Code § 1309.14(A)(1) and § 1309.39(E) require that security agreements and financing statements include a description of the land on which the crops are to be grown only to perfect a security interest in growing crops. *See* P. Coogan, W. Hogan and D. Vagts, Bender's Uniform Commercial Code Service Secured Transactions Under the U.C.C. § 27.02[6] at 2762, n. 42(a) (1983). Bank One is claiming an interest in **harvested crops not growing crops.**

The Naves' reliance on *In re Mount,* 54 U.C.C. Rep.Serv. 653 (S.D.Ohio 1968) is

misplaced. While the case is correctly cited for the proposition that under Ohio Law a description of the real estate and the name of the record owner or lessee is required in a financing statement to perfect a security interest in growing crops, the opinion does not discuss perfection of a security interest in harvested crops. In fact, in *Mount,* the opinion notes that, [N]either the "Proceeds of Collateral" nor "Products of Collateral" were noted as covered, in the spaces provided for such notations. *Id.* at 654. The facts in the case before the court are exactly the opposite, since in all instances the Bank did note coverage of "Proceeds" and "Products" on all financing statements.

A more appropriate case is *In Schneider v. Ray (In re Roberts)*, 38 B.R. 128 (Bankr.D.Kan.1984), in which the court held that harvested crops are not growing crops and that a state statute requiring a financing statement to contain a description of the land on which the crops were grown in order to perfect an interest in growing crops was inapplicable to an interest in harvested crops. A description of the land on which the crops were grown is not required to perfect an interest in harvested crops. *Id.* at 133. Crops cease to be growing crops when they are harvested. *Id.* at 134.

In *Miami Valley Production Credit Association v. Klipfer (In re Klipfer)*, 62 B.R. 290 (Bankr.S.D.Ohio 1986), Judge William A. Clark of this court, adopted the reasoning of *Roberts* and held that the creditor in that case had a perfected interest in the debtor's harvested crops although it had an unperfected security interest in the crops while they were growing. *Klipfer* at page 295.

Ohio Rev. Code § 1309.15 states that "a security agreement may provide that any or all obligations covered in the security agreement are to be secured by after-acquired collateral." The parties security agreements contain such provisions. The February 5, 1982 security agreement granted an interest in "all grain and farm products now owned or hereafter acquired

..." The February 26, 1982 agreement used the same language, as did the July 26, 1982, and the January 13, 1983 agreements. The July 18, 1984 security agreement granted an interest in "all inventory including but not limited to grain, hay and silage now owned and hereafter acquired." (See Doc. 41, Exhibits G, H, I, J and M).

Ohio Rev. Code § 1309.21(A) requires filing to perfect a security interest in such circumstances. Bank One filed financing statements covering grain and farm products. The debtors do not dispute that the filing was proper, except for their dispute as to the lack of a description of land on which the crops were grown as required by Ohio Rev. Code § 1309.39(E). As previously noted, Bank One is claiming an interest in crops that were harvested.

Ohio Rev. Code § 1309.22 provides that a security interest is perfected when it has attached and when all other necessary steps required for perfection have been taken. Here, filing was required and performed by Bank One. Ohio Rev. Code § 1309.14 requires that in order for a security interest to attach, the debtor must sign a security agreement containing a description of the collateral, value must be given, and the debtor must have rights in the collateral. Here the Naves signed several security agreements containing a description of crops and farm products. The Naves do not dispute that Bank One gave value under the agreements. The last requirement under the section was met when the Naves had rights in the collateral. The Naves did not have rights in the grain as a farm product until the time the corn was harvested and ceased to be a growing crop. The Naves gained rights in the corn as a farm product at the time it was harvested, and the security interest was perfected at that time.

No intervening creditors obtained or perfected an interest in the corn between the time Bank One filed its financing statement and the time of perfection. Accordingly, Bank One held the only perfected security interest in the grain at the date of

the petition. The grain did not lose its character as a farm product by its storage in a commercial storage facility. *In re Roberts* at 133.

Ohio Rev. Code § 1309.14(C) states that a security agreement gives the secured party rights to the proceeds of the collateral. The money being held in escrow by Bank One from the sale of the grain meets the definition of proceeds in Ohio Rev. Code § 1309.25(A), "... whatever is received upon sale, exchange, collection, or other disposition of collateral or proceeds." Subsection (D) of that section further provides "In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds: (1) In identifiable non-cash proceeds and in separate deposit accounts containing only proceeds; ..." In this case, the proceeds from the sale of the corn have been held since the time of the sale in a separate account at Bank One.

Having determined that Bank One had a perfected security interest in the Naves' harvested corn which was not defeated by the loss of storage out of the physical possession of the crops by their storage or subsequent sale of the corn, the motion of Bank One To Authorize Application Of Funds to the debt due Bank One is GRANTED and IT IS HEREBY ORDERED that the proceeds of the sale of the corn and any accumulated interest held by agreement of the parties in a savings account at Bank One constitute property of Bank One to be applied to the debt of the Naves to Bank One.

An order consistent with this decision is simultaneously entered.

### APPENDIX (1)

**§ 1309.14 [Attachment and enforceability of secured interest; proceeds, formal requisites.]**

(A) Subject to the provisions of section 1304.14 of the Revised Code on the security interest of a collecting bank, section 1308.-36 of the Revised Code on security interests in securities, and section 1309.11 of the Revised Code on a security interest arising under sections 1302.01 to 1302.98 of the Revised Code, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(2) Value has been given; and

(3) The debtor has rights in the collateral.

(B) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in division (A) of this section have taken place unless explicit agreement postpones the time of attaching.

(C) Unless otherwise agreed, a security agreement gives the secured party the rights to proceeds provided by section 1309.25 of the Revised Code.

(D) A transaction although subject to sections 1309.01 to 1309.50 of the Revised Code, is also subject to sections 1317.01 to 1317.99 and 1321.01 to 1321.33 of the Revised Code, and divisions (A), (B), and (C) of section 1321.99 of the Revised Code and in the event of conflict between the provisions of sections 1309.01 to 1309.50 and 1317.01 to 1317.99, 1321.01 to 1321.33 of the Revised Code, and divisions (A), (B), and (C) of section 1321.99 of the Revised Code, the provisions of sections 1317.01 to 1317.99, 1321.01 to 1321.33 of the Revised Code, and divisions (A), (B), and (C) of section 1321.99 of the Revised Code shall prevail. Failure to comply with such provisions has only the effect provided therein.

### APPENDIX (2)

**§ 1309.39 [Formal requisites of financing statements; amendments; mortgage as financing statement.]**

(A) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, timber to be cut, or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or when the financing statement is filed as a fixture filing pursuant to section 1309.32 of the Revised Code and the collateral is goods which are or are to become fixtures, the statement must also comply with division (E) of this section. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor. A carbon, photographic, or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.

(B) A financing statement which otherwise complies with division (A) of this section is sufficient when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in:

(1) collateral already subject to a security interest in another jurisdiction when it is brought into this state or when the debtor's location is changed to this state. Such a financing statement must state that the collateral was brought into this state or that the debtor's location was changed to this state under such circumstances; or

(2) proceeds under section 1309.25 of the Revised Code if the security interest in the original collateral was perfected. Such a financing statement must describe the original collateral; or

(3) collateral as to which the filing has lapsed; or

(4) collateral acquired after a change of name, identity, or corporate structure of the debtor under division (G) of this section.

(C) A form substantially as follows is sufficient to comply with division (A) of this section:

Name of debtor (or assignor) ...................
Address ........................................
Name of secured party (or assignee) ............
Address ........................................
1. This financing statement covers the following types (or items) of property:
    (Describe) ................................
2. (If applicable) The above goods are to become fixtures on:
    The above crops are growing or are to be grown on:
    The above timber is standing on:
    The above minerals or the like, including oil and gas, or accounts will be financed at the wellhead or minehead located on:
    (Describe real estate) .......................
and this financing statement is to be indexed in the real estate records of the county in which the real estate is situated. (If the debtor does not have an interest of record) The name of a record owner or record lessee is
........................................
3. (If products of collateral are claimed) Products of the collateral are also covered.
    (Use whichever is applicable) Signature of Debtor (or Assignor) .......................................
    (Use whichever is applicable) Signature of Secured Party (or Assignee) ..............................

(D) A financing statement may be amended by filing a writing signed by both the debtor and the secured party. An amendment does not extend the period of effectiveness of a financing statement. If any amendment adds collateral, it is effective as to the added collateral only from the filing date of the amendment. In sections 1309.01 to 1309.50 of the Revised Code, unless the context otherwise requires, the term "financing statement" means the original financing statement and any amendments.

(E) A financing statement covering crops growing or to be grown or timber to be cut or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or a financing statement filed as a fixture filing pursuant to section 1309.32 of the Revised Code must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records of the

county in which the real estate is situated, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee.

(F) A mortgage is effective as a financing statement filed as a fixture filing from the date of its recording if (1) the goods are described in the mortgage by item or type, (2) the goods are or are to become fixtures related to the real estate described in the mortgage, (3) the mortgage complies with the requirements for a financing statement in this section other than a recital that it is to be indexed in the real estate records, and (4) the mortgage is duly recorded. No fee with reference to the financing statement is required other than the regular recording and satisfaction fees with respect to the mortgage.

(G) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

(H) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.