**BANK OF CRESBARD, Appellant,**

v.

**LINDHORST FARMS, INC., Appellee.**

**Civ. No. 87–1024.**

United States District Court, D. South Dakota, N.D.

Oct. 6, 1987.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, S.D., for appellant.

William J. Pfeiffer, Aberdeen, S.D., William P. Westphal, U.S. Trustee, Minneapolis, Minn., for appellee.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

The Debtor, Lindhorst Farms, Inc., filed a voluntary Chapter 11 petition on August 4, 1986 in the United States Bankruptcy Court for the District of South Dakota.

At the time of filing, the Debtor had on hand the following harvested crops (Docket No. 13, paragraphs 11, 12 and 14):

| Crop | Amount |
| --- | --- |
| 1985 Sunflowers | $ 3,483.07 |
| 4,000 Bushels of Oats | 2,800.00 |
| 2,200 Bushels of Barley | 2,200.00 |
| 60 Bushels of Grain Sorghum | 105.00 |
| 400 Pounds of Sunflowers | 2,400.00 |
| 50 Tons of Silage | 500.00 |
| 1,100 Tons of Mixed Hay | 22,000.00 |
| 1985 Oats and Millet | 5,333.00 |
| TOTAL | $38,821.07 |

In addition, the Debtor either received or was entitled to the following government program payments (Docket No. 13, paragraphs 6, 7 and 13):

| | Government Program | Amount |
| --- | --- | --- |
| 1. | 1986 Deficiency and Diversion Payments | $ 8,994.16 |
| 2. | 1984 CCC Wheat Storage Payment | 2,504.25 |
| 3. | 1986 PIK Certificates | 6,200.00 |
| | TOTAL | $17,698.41 |

After the Debtor brought a Complaint to determine the validity and priority of certain liens, the bankruptcy court found that the Bank of Cresbard did not have a security interest in the Debtor's harvested crops or in the government program payments or entitlements acquired by the Debtor. The Appellant, Bank of Cresbard, appeals each of these findings. This Court now reverses the bankruptcy court on each of these findings.

## I.

The first issue on appeal is whether the Bank of Cresbard has a security interest in the Debtor's harvested crops even though the financing statement filed by the Bank contains no description of the real estate upon which these crops were grown.

SDCL § 57A-9-402(1) states in relevant part: "When the financing statement covers crops growing or to be grown ..., the statement must also contain a description of the real estate concerned." SDCL § 57A-9-402(1) (1980). While the Bank admits that no such description was contained

in the financing statement, the Bank argues that § 57A–9–402(1) is inapplicable because the Bank claims a security interest in crops that have been harvested or severed from the real estate, rather than in "growing crops" as specified in the statute.

The Bank entered into a series of security agreements with the Debtor, Lindhorst Farms, Inc., which each encompass:

all farm products, including but not limited to crops, supplies, used or produced in farming and feeding operations, feeds kept or stored in connection therewith, contract rights, accounts, and all proceeds....

(Exhibit "C").

Two bankruptcy courts have specifically addressed the issue of whether harvested crops constitute farm products. In each of the three cases on point, the language of the UCC has been literally interpreted to apply only to "growing crops" and, by negative implication, to exclude crops that have been harvested. *See Matter of Nave*, 68 B.R. 139 (Bkrtcy.S.D.Ohio 1986); *In Re Klipfer*, 62 B.R. 290 (Bkrtcy.S.D.Ohio 1986); *In Re Roberts*, 38 B.R. 128 (Bkrtcy. Kan.1984). In first deciding this issue, the United States Bankruptcy Court for the District of Kansas concluded that the perfection of a security interest in farm products does not require a real estate description in the financing statement. *See In Re Roberts*, 38 B.R. 128, 133 (Bkrtcy.Kan. 1984). The court in that case then addressed the issue of whether the secured or harvested crops were "farm products." *Id.*

Under SDCL § 57A–9–109(3), farm products are defined as:

crops or ... products of crops ... if they are in the possession of a debtor engaged in ... farming operations.

SDCL § 57A–9–109(3) (1980). As the record on appeal makes no mention of any dispute about the possession of the harvested crops, we assume that these crops were in the possession of the Appellee, Lindhorst Farms, Inc., on the date of the Chapter 11 filing. This Court therefore finds that the harvested crops totalling $38,821.07 were farm products within the

meaning of the security agreements and financing statement.

While this Court is mindful of the possible lien problems that may arise from this holding due to the time gap between the perfection of the security interest in farm products and the unperfected security interest in growing crops, *see In Re Roberts*, 38 B.R. 128, 134 (Bkrtcy.Kan.1984); *In Re Klipfer*, 62 B.R. 290, 295 (Bkrtcy.S.D.Ohio 1986), no such problems are present in this case. *Compare In Re Roberts*, 38 B.R. 128 (Bkrtcy.Kan.1984) *with Scott State Bank v. Tabor Grain Co.*, 109 Ill.App.3d 858, 65 Ill.Dec. 381, 441 N.E.2d 173 (1982) (conversion action against third party purchaser); *People's Bank v. Pioneer Food Industries, Inc.*, 253 Ark. 277, 486 S.W.2d 24 (1972) (conversion action against third party purchaser). Thus, this Court follows *In re Roberts* in holding that the creditor, the Bank of Cresbard, has a security interest in the harvested crops. The holding of the bankruptcy court is, therefore, reversed.

## II.

The Appellant, the Bank of Cresbard, next appeals the decision of the bankruptcy court disallowing a security interest in certain government program payments and entitlements totalling $17,698.41.

The Appellee, Lindhorst Farms, Inc., argues that the 1986 deficiency and diversion payments, the 1984 Commodity Credit Corporation storage payment, and the 1986 Payment-In-Kind drafts are proceeds of the harvested crops. The Appellee then asks us to hold that security interests in these proceeds were not perfected because the security interest in the growing crops was not perfected due to failure of the bank to include a description of the real estate in the financing statement as required by SDCL 57A–9–402. This Court disagrees.

Federal farm subsidy payments have been held to be "proceeds" within the meaning of the UCC. *See In re Matter of Munger*, 495 F.2d 511, 512–13 (9th Cir. 1974) (decided under California law applying U.C.C. § 9–306(1) on the definition of "proceeds" (at 513)); *contra In re Connel-*

*ly,* 41 B.R. 217, 220 (Bkrtcy.Mn.1984). Other courts have decided that federal farm subsidies should be viewed as substitutes for crop proceeds. *See, e.g., Osteroos v. Norwest Bank of Minot, N.A.,* 604 F.Supp. 848, 849 (D.N.D.1984) (PIK entitlement viewed as agreement on following year's crop); *In the Matter of Hollie,* 42 B.R. 111, 121 (Bkrtcy.D.Ga.1984) (deficiency payments as substitute for proceeds of crops).

SDCL § 57A–9–306(1) defines proceeds broadly to include "whatever is received when collateral or proceeds are sold, exchanged, collected or otherwise disposed of." SDCL § 57A–9–306(1) (1980).

■ We need not decide whether the government program payments and entitlements are proceeds within the meaning of SDCL § 57A–9–306(1) because even assuming that these amounts do not constitute proceeds, they are contract rights or accounts, as stated in the security Agreements. (Exhibit "C"). *See, e.g., In re Sunberg,* 729 F.2d 561, 562 (8th Cir.1984) (PIK payment as "account"); *In Re Connelly,* 41 B.R. 217, 220–21 (Bkrtcy.Mn.1984) (grain storage payment as "account" or "general intangible"); *In re Schmidt,* 38 B.R. 380, 383 (Bkrtcy.D.N.D.1984) (PIK diversion payment as executory contract).

SDCL § 59A–9–106 defines "account" to mean "any right to payment for goods sold or leased or for services rendered." SDCL § 57A–9–106 (1980). A "contract right" is defined as "any right to payment under a contract not yet earned by performance." SDCL § 57A–9–106 (1980).

In entering into the security agreements, the parties were presumably aware of the existence of federal subsidy payments in an agricultural context. *See In re Sunberg,* 729 F.2d 561, 562 (8th Cir.1984); *In re the Matter of Munger,* 495 F.2d 511, 513 (9th Cir.1974). Thus, in order for the references in the security agreements to contract rights and accounts to have some meaning, they must be read to include such payments and entitlements. *See In re Connelly,* 41 B.R. 217, 220 (Bkrtcy.Mn.1984).

As contract rights and accounts, the Bank's right to the three federal subsidy payments arose when the payments came into existence. The Bank's security interest in such accounts and contract rights attached at that time. *See, e.g., In Re Connelly,* 41 B.R. 217, 221 (Bkrtcy.Minn. 1984) (security interest in Commodity Credit Corporation storage payments attaches when grain stored). Thus, as substitutes for crop proceeds, deficiency payments, commodity payments or other government agricultural entitlements are perfected as any other contract right or account. This result is consistent with the realities of financing transactions in the agricultural context, *see In Re the Matter of Munger,* 495 F.2d 511, 513 (9th Cir.1974), and recognizes that but for the federal subsidy program the bank would have had a lien on the crop proceeds. *See In the Matter of Hollie,* 42 B.R. 111, 121 (Bkrtcy.D.Ga.1984) (milk diversion program payments).

For the above reasons, the holding of the bankruptcy court is, therefore, reversed.