■ BENEFICIAL FINANCE CO. OF NEW YORK, INC., Appellant, v. KURLAND CADILLAC-OLDSMOBILE, INC., Respondent.— In an action for conversion of an automobile, plaintiff appeals, by permission, from an order of the Appellate Term, Ninth and Tenth Judicial Districts, dated September 13, 1968, which modified an order of the County Court, Rockland County, dated June 29, 1967, so as to grant summary judgment to defendant, dismissing the complaint. The County Court order denied plaintiff's motion for summary judgment. Order

of the Appellate Term reversed, on the law, with $10 costs and disbursements, and order of the County Court affirmed, without costs. On March 25, 1966 Sheila Hardy borrowed $969 from plaintiff, evidenced by a promissory note. At the same time she executed an agreement creating a security interest in favor of plaintiff (Uniform Commercial Code, § 9-105, subd. [1], par. [h]) in a 1959 Cadillac automobile purchased with the proceeds of the loan. In the agreement the debtor authorized plaintiff to file a financing statement without the debtor's signature (Uniform Commercial Code, § 9-402, subd [2], par. [c]). On March 28, 1966 plaintiff executed and filed a financing statement without the signature of the debtor, describing the motor vehicle covered by the security agreement. Plaintiff did not insert an "x" in a box opposite a provision in the form of the financing statement to the effect that the debtor had signed a security agreement authorizing the filing of the statement. The debtor immediately transferred title to the automobile to Shirlee M. Rook. On April 23, 1966 the latter, in payment of part of the purchase price of another automobile, transferred the Cadillac to defendant. Thereafter Sheila Hardy defaulted under the terms of her promissory note in the hands of plaintiff. Plaintiff discovered that the Cadillac was in defendant's possession and demanded its return. Upon defendant's refusal, plaintiff instituted this action for conversion. The County Court, Rockland County, denied plaintiff's motion for summary judgment, holding that plaintiff had not perfected its security interest in the Cadillac because of the absence of a check mark in the financing statement indicating that the security agreement with Sheila Hardy had authorized the filing of the financing agreement without her signature. The Appellate Term modified the order of the County Court by granting summary judgment in favor of defendant dismissing the complaint, on the ground that plaintiff's action was without merit in view of the defect in the financing statement. We are of a contrary view. We do not consider that the absence of the check mark impaired plaintiff's security interest; and, hence, the complaint should not have been dismissed. We are of the opinion, however, that triable issues exist as to the proof of allegations in the complaint of which defendant can have no knowledge, and that, accordingly, plaintiff's motion for summary judgment was properly denied. A financing statement is sufficient if it (1) is signed by the debtor and the secured party, (2) gives an address of the secured party from which information concerning the security interest may be obtained and (3) describes the items covered by the security agreement (Uniform Commercial Code, § 9-402, subd. [1]). If a financing statement otherwise complies with the statute, the first requirement may be satisfied by the signature of the secured party alone in three instances, two of which are not applicable here; the third provides that the financing statement "must state that it is filed in accordance with a security agreement signed by the debtor and authorizing the filing of the statement" (Uniform Commercial Code, § 9-402, subd. [2], par. [c]). The statute further provides that "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading" (Uniform Commercial Code, § 9-402, subd. [5]). The failure by plaintiff to check the box opposite the provision that the debtor had signed a security agreement authorizing plaintiff to file the financing statement was a minor error which could not seriously mislead one who searched the file. The fact was that the debtor had signed a security agreement authorizing the filing of the statement without her signature; the fact was that the Cadillac was covered by the security agreement; and the fact was that the debtor had signed and delivered a promissory note to plaintiff. Thus, the debtor's rights were not adversely affected by the absence of the check. On the other hand,

defendant, if it had searched the file and found the financing statement, would have had full notice of the transaction between the debtor and plaintiff and that the Cadillac was the subject of the transaction. There is no evidence in this record that defendant made any search of the file. In determining the effect of the omission of the "x", we should regard the statement as filed as a whole and weigh its contents in the light of the code and its objectives. The absence of the check mark in the box in the form would not, in our mind, reduce the need of inquiry in the mind of the searcher, but indeed quicken it. We cannot therefore detect any prejudice to defendant by the omission of the check mark in the statement. In reaching the conclusion that the financing statement was effective, we implement the policy of the code that the law governing commercial transactions be simplified and modernized, and liberally construed to achieve that objective (Uniform Commercial Code, § 1–102, subds. [1], [2]). The purpose of a notice-filing statute is to give protection to a creditor by furnishing to others intending to enter into a transaction with the debtor a starting point for investigation which will result in fair warning concerning the transaction contemplated (*Rooney* v. *Mason,* 394 F. 2d 250; *Strevell-Paterson Finance Co.* v. *May,* 77 N. M. 331; *Plemens* v. *Didde-Glaser,* 244 Md. 556; *Alloway* v. *Stuart,* 385 S. W. 2d 41 [Ky.]; 1 Gilmore, Security Interests in Personal Property, pp. 468–470). We think in the structure of this case that, given a fair construction to the statement as it would appear to a reasonable person upon examination, the omission to check the proper box was minor and could not be said to be "seriously misleading." Hopkins, Benjamin and Martuscello, JJ., concur; Christ, Acting P. J., dissents and votes to affirm the order of the Appellate Term, with the following memorandum, in which Brennan, J., concurs: We would affirm the Appellate Term order granting summary judgment to defendant. In order to give protection to a holder of a security interest, the Uniform Commercial Code establishes a notice procedure by which information becomes available to prospective lenders or purchasers, disclosing the encumbrances of title upon chattels (Uniform Commercial Code, § 9–401 *et seq.*). However, in order for the holder of a security interest to get the protection which the filing of a financing statement gives, the Legislature has prescribed specific and precise steps to be followed. Subdivision (1) of section 9–402 of the Uniform Commercial Code requires that a financing statement be signed by both the debtor and the secured party and subdivision (3) sets out the form of the statement, with the necessary lines for both signatures (see § 9–402, subd. [3], par. 4). Subdivision (2) of the same section creates three exceptions in which a financing statement will be valid and effective where only the signature of the secured party appears thereon. The first two exceptions contained in paragraphs (a) and (b) of subdivision (2) of section 9–402 are not pertinent. It is paragraph (c) of subdivision (2) which is asserted as the basis for accepting the financing statement herein involved as valid. In pertinent part the statute provides: " (2) A financing statement which otherwise complies with subsection (1) is sufficient although it is signed only by the secured party when it is filed to perfect a security interest in  *  *  *  (c) collateral under a security agreement signed by the debtor and authorizing the secured party to file a financing statement. *Such a financing statement must state that it is filed in accordance with a security agreement signed by the debtor and authorizing the filing of the statement* and may be filed by either the original secured party or by the assignee; the statement therein indicating the types, or describing the items, of collateral must be limited to the types, or description of items, of collateral under the security agreement" (emphasis added). In the present case the financing statement contains no indication

of which of the three exceptions was being utilized to dispense with the requisite signature of the debtor. Moreover, the financing statement does not show anywhere that it was to be filed in accordance with a security agreement signed by the debtor. It cannot be disputed that the facts do not fit into any of the statutory exceptions authorizing a financing statement to be valid without the signatures of both necessary parties. It is not for the courts in such a circumstance to challenge the legislative purpose or wisdom in establishing this specific and essential facet of the requirements governing financing statements. To hold that a financing statement, although incomplete for lack of a mandatory and substantive element and thus improperly filed, is just as effective as one which complies with the statutory formula is a complete nullification of that statutory plan. The financing statement in this case did not comply with the statute in a precise or substantial manner because it did not contain the debtor's signature and it did not show a permissible reason for its omission. It was fatally defective, it was improper to file it and its usefulness as a proper notice should be disregarded. [57 Misc 2d 806.]