OPINION OF THE COURT
John R. Tenney, J.
The parties have submitted this case on an agreed statement of facts. In March of 1973, Allis-Chalmers Corporation filed a financing statement (UCC-1) designating Geo-dynamics, Inc., as the debtor, Allis-Chalmers Corporation as the secured party and Allis-Chalmers Credit Corporation as the assignee of the secured party. The UCC-1 covered “the debtor’s inventory of new and used and rental machinery together with attachments and accessories thereto and replacement parts therefor now owned or hereafter acquired on which the debtor has given or hereafter grants Allis-Chalmers Corporation a security interest”. The parties agree that the financing statement is still valid. There are no security agreements between Geodynamics and Allis-Chalmers Credit Corporation, the assignee of the secured party.
Special Aggregates, Inc., is a New York corporation affiliated with Geodynamics to the extent that there are common shareholders. In February of 1975, the Bank of Utica began to refinance loans with Special Aggregates. At *284 or about this time, the bank corresponded with Credit Corporation regarding its interest in a second collateral mortgage on property owned by Special Aggregates. On February 24, 1975 the bank was advised that Credit Corporation claimed a security position in various collateral interests of Special Aggregates including a claimed security interest in the Geodynamic machinery. Credit Corporation did not file a separate UCC-1 for these transactions.
On March 2, 1978 Geodynamics guaranteed loans made by the bank to Special Aggregates and granted a security interest to the bank of “all machinery and equipment and inventory (new and used) now owned and hereafter acquired” together with accounts receivable and contracts receivable. On December 18, 1978 a financing statement was filed by the bank with the same description. Geodynamics, Inc., was designated as the debtor and the Bank of Utica was designated as the secured party.
After December 18, Credit Corporation repossessed and sold all the machinery and equipment of Geodynamics for the sum of approximately $350,000. In this action,' the parties agree that the bank is entitled to $40,000, and Credit Corporation is entitled to $248,000 from the proceeds of the sale.
There is $62,000 which is in dispute. The court is asked to determine the effect of the 1973 UCC-1 on certain security agreements between Geodynamics and Allis-Chalmers Credit Corporation dated June 28,1974, July 3, 1974, July 4, 1974, November 19, 1975 and December 20, 1977. The question which the parties wish to have resolved is, “Does the assignment of Allis-Chalmers to Credit Corporation on March 2, 1973, of all security interests past and future protect Credit Corporation as to subsequent security agreements between Geodynamics and Credit Corporation?” If the financing statement does not protect Credit Corporation, does the fact that it gave notice in 1975 to the bank that it claimed a security interest create a priority?
Certain provisions of the Uniform Commercial Code must be considered in resolving this problem. Subdivision (1) of section 9-402 of the Uniform Commercial Gode provides that “A financing statement may be filed before a *285 security agreement is made or a security interest otherwise attaches.” When Credit Corporation is designated as an assignee, subdivision .(3) of section 9-405 of the Uniform Commercial Code provides “the assignee is the secured party of record.” Part 3 of article 9 of the Uniform Commercial Code establishes rules for determining the rights of third parties and establishes a notice procedure. Part 4 of article 9 covers filing requirements. The purpose of notice filing is to make the general public aware of a prior interest in collateral so that proper inquiry can be made. (Bank of Utica v Smith Richfield Springs, 58 Misc 2d 113.) It is intended to alert a prospective lender that there may be a conflicting security interest and give him the opportunity to investigate further. (Beneficial Fin. Co. of N.Y. v Kurland Cadillac-Oldsmobile, 32 AD2d 643.) The financing statement is merely a notice that a security interest may exist. (Matter of Marta Coop., 74 Misc 2d 612.) It is not the contract between the parties. The terms of the security agreement establish the adequacy of the collateral description. Once the lending institution, in this case, the Bank of Utica, learned of a financing statement or a claimed security agreement, the burden shifted to the bank to make inquiry to determine the extent of the collateral involvement. (Marine Midland Bank-Eastern Nat. Assn. v Conerty Pontiac-Buick, 77 Misc 2d 311.)
The bank did make further inquiry to the Credit Corporation. The bank acknowledged the existence of a collateral mortgage, but stated it understood the “mortgage lien in no way was to incumber any of the sand processing equipment or personal property of Special Aggregates”. Credit Corporation responded by furnishing a list of the equipment securing the mortgage. It also furnished a list of equipment of Geodynamics for which Allis-Chalmers claimed “a first security interest”. The letter further encloses a copy of an “Agreement” and states, “we are not relinquishing any of the rights this document conveys to Allis-Chalmers Credit Corporation”.
At this point, the financing statement had performed its task. It had alerted the Bank of Utica to a possible security interest and investigation fully disclosed its existence and the extent of the claim.
*286 Plaintiff takes the narrow view that the financing statement is the security agreement or at least limits its scope. It argues that “the assignment could not create more rights than the original financing statement had.” The better rule is that the financing statement is a notice only. (Bank of Utica v Smith Richfield Springs, supra; see, contra, Matter of Marta Coop., supra, p 615.) The security agreement is the contract, and it determines the collateral involved. There are several security agreements, all of which were entered into after the assignment but prior to the Bank of Utica loan. Subdivision (3) of section 9-405 of the Uniform Commercial Code makes the assignee the secured party. Subdivision (1) of section 9-402 of the Uniform Commercial Code clearly indicates that the security agreement does not even need to be in existence when the financing statement is filed. All that is important is that there be a valid enforceable security interest that could be examined by a subsequent creditor. (Marine Midland Bank-Eastern Nat. Assn. v Conerty Pontiac-Buick, supra, p 314.)
When the financing statement is in general terms and apparently intends to apply to existing and after-acquired property, it has a broad effect. The secured party (assignee Credit Corporation) is entitled to the benefit of the statement as a clear notice that a security interest in after-acquired property is claimed. The claim that Credit Corporation only had filed against property for which Allis-Chalmers had a security interest is erroneous. As the secured party, it was entitled to protection by the notice for direct transactions with Geodynamics. The statement must be read as if it were originally made out to Credit Corporation.
Thus, the court finds that the subsequent security agreements between Geodynamics and Credit Corporation were within the purview of the March 2, 1973 financing statement. It is not necessary to consider the second question.