**UNITED STATES of America,
Petitioner–Appellant,**

v.

**Dale SMITH, Suzanne Smith, Gordon
E. Mills and Sharon R. Mills,
Respondents–Appellees.**

**Nos. 1432, 1433, Dockets 86–5051, 5053.**

United States Court of Appeals,
Second Circuit.

Argued July 15, 1987.

Decided Nov. 9, 1987.

Aaron B. Kahn, Atty., U.S. Dept. of Agr., Washington, D.C. (Roger P. Williams, U.S. Atty., Frank P. Geraci, Jr., Asst. U.S. Atty., Rochester, N.Y., James Michael Kelly, Associate Gen. Counsel and Raymond W. Fullerton, Asst. Gen. Counsel, U.S. Dept. of Agr., Washington, D.C., of counsel), for petitioner-appellant.

Michael A. Wineburg, Auburn, N.Y. (Wineburg, Weinstein, Scollan & Cannucciari, of counsel), for respondents-appellees.

Before NEWMAN, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

This case addresses the distinction between growing crops and harvested crops under Article 9 of the New York Uniform Commercial Code (McKinney 1964 & Supp. 1987). The United States appeals from an order of the District Court for the Western District of New York, Michael A. Telesca, Judge, affirming a decision by the Bankruptcy Court for the Western District of New York, Edward D. Hayes, Bankruptcy Judge. The district court held that the United States failed to perfect its security interests in the respondents' harvested crops, because its financing statements did not comply with § 9–402 of the U.C.C.

We hold that the United States did, in fact, have perfected security interests in the crops at issue, despite its admitted failure to comply with § 9–402 with respect to those crops. We therefore reverse the decision of the district court, and remand with instructions to remand to the bank-

ruptcy court for the entry of appropriate orders.

## BACKGROUND

The Smiths and the Mills ("respondents") are grain farmers in Seneca County, New York. Between 1977 and 1983, respondents borrowed substantial sums of money from the Farmers Home Administration ("FmHA"), an agency of the United States Department of Agriculture. To secure these loans, respondents executed security agreements which granted security interests to the FmHA in various types of collateral. The collateral included "[a]ll crops ... now planted, growing or grown, or which are hereafter planted" on certain designated parcels of real estate. The collateral also included "other farm products, and supplies, now or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto."

Respondents also executed financing statements, which the FmHA duly filed with the Clerk of Seneca County. The financing statements provided that the following types of collateral were covered: "crops, livestock, supplies, other farm products and farm and other equipment." Both the security agreements and the financing statements listed specific parcels of real estate on which respondents' crops were growing or to be grown.

In 1984, the Smiths and the Mills both filed bankruptcy petitions. At the time of filing, the Smiths were in possession of approximately 400 tons of harvested corn; the Mills, in turn, had possession of several tons of harvested corn and hay. The vast majority of this corn and hay had been grown on lands which were not identified in the FmHA security agreements or financing statements.

Respondents sought leave in the bankruptcy court to use these harvested crops (and the proceeds thereof) in the continuing operation of their farms. The United States objected to respondents' request, arguing that the FmHA's perfected security interests in respondents' farm products extended to the harvested crops at issue. The United States therefore sought protection against what it considered to be a wasting of assets in which it claimed a security interest.

The bankruptcy court concluded that this case was controlled by N.Y.U.C.C. § 9–402. Under that section, where a financing statement covers crops that are "growing or to be grown," the financing statement must contain a description of the real estate on which the crops are grown, as well as the name of the record owner. *See id.* §§ 9–402(1) & (5) (McKinney Supp.1987). The bankruptcy court reasoned that because the harvested crops at issue were grown on lands not identified in the financing statements, the United States did not have perfected security interests in these crops. The court accordingly allowed respondents to use the harvested crops in their farming operations, and declined to order any protection for the United States' asserted interest in the crops.

The United States appealed to the District Court for the Western District of New York, which affirmed the bankruptcy court's orders.

## DISCUSSION

■ Because this case involves rights of the United States arising under a federal lending program, it must be decided with reference to federal law. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979). In appropriate circumstances, however, state law may be adopted as the federal rule of decision. *See id.* at 728–29, 99 S.Ct. at 1458–59. In the present case, we believe that New York law "furnish[es] convenient solutions in no way inconsistent with adequate protection of the federal interest[s]." *Id.* at 729, 99 S.Ct. at 1459 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 309, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). The United States, moreover, does not argue that its interests will be negatively affected by the application of state law. We therefore adopt the commercial law of

New York as the appropriate rule of decision.

Relations between debtors and secured creditors are governed by Article 9 of the New York Uniform Commercial Code (McKinney 1964 & Supp.1987). It is undisputed that when respondents filed for bankruptcy the United States held perfected security interests in respondents' "farm products." "Farm products" are defined in N.Y. U.C.C. § 9–109(3) (McKinney 1964). The definition includes "crops," as long as they are "in the possession of a debtor engaged in ... farming operations." *Id.*

Security agreements and financing statements covering farm products are generally sufficient if they contain a brief description of the types or items of collateral. *See* N.Y. U.C.C. §§ 9–203(1)(a); 9–402(1) (McKinney Supp.1987). Where collateral consists of "crops growing or to be grown," however, Article 9 outlines several special requirements with which both the security agreement and the financing statement must comply. According to § 9–203(1)(a) (McKinney Supp.1987), a security agreement covering "crops growing or to be grown" must contain "a description of the land concerned." In a similar vein, § 9–402(1) (McKinney Supp.1987) provides:

> When the financing statement covers crops growing or to be grown ... the statement must also contain a brief description sufficient for the identification of the real estate concerned, show the name of a record owner, and also comply with subsection (5).

Section 9–402(5) (McKinney Supp.1987) states:

> A financing statement covering crops growing or to be grown ... must show that it covers this type of collateral, [and] must recite that it is to be indexed in the real estate records ....

■ Although respondents' security agreements and financing statements listed several parcels of land on which crops were growing or to be grown, the harvested crops at issue in this case were not grown on real estate described in the relevant documents. Both the bankruptcy and district courts held that this failure to conform to Article 9's special requirements for "crops growing or to be grown" was fatal to the United States' asserted security interest in the harvested crops.

The United States concedes that under N.Y. U.C.C. § 9–402, it did not have a perfected security interest in the crops while they were growing. The United States argues, however, that once the crops were harvested, they were transformed into ordinary farm products, no longer subject to the special requirements of §§ 9–203(1)(a) and 9–402(1) & (5). As soon as the crops assumed the status of ordinary farm products, moreover, the United States' perfected security interest in after-acquired farm products automatically attached to these harvested crops.

We agree with the United States. Of primary importance is the language of Article 9 itself. The code sections which require that security agreements and financing statements contain a description of the land and the name of the record owner apply only to crops which are "growing or to be grown." *See id.* Harvested crops, by contrast, are neither "growing" nor "to be grown." They are fungible commodities, no longer attached to a particular parcel of land, and indistinguishable from stored crops which the farmer may have purchased or acquired from some other source. As the United States points out, it would be virtually impossible, under the district court's interpretation of § 9–402, for a creditor *ever* to obtain a valid security interest in harvested and stored crops in a debtor's possession unless the creditor knew in advance where the crops had been grown.

At least two other courts have considered whether there is a distinction between growing crops and harvested crops under the U.C.C., and have reached the opposite conclusion from that of the district court in this case. *See Matter of Nave,* 68 B.R. 139 (Bankr.S.D.Ohio 1986); *In re Klipfer,* 62 B.R. 290 (Bankr.S.D.Ohio 1986); *In re Roberts,* 38 B.R. 128 (Bankr.D.Kan. 1984); *cf. In re Tinsley and Groom,* 49 B.R. 85, 92–93 (Bankr.W.D.Ky.1984) (harvested crops became "inventory," and fi-

nancing statement covering them did not need to be filed in county where crops were grown).

Most notable among these cases is *Roberts*, 38 B.R. 128, where the bankruptcy court looked to treatises and other secondary sources, as well as to the U.C.C. itself, to determine whether a security interest in harvested crops could be perfected without a description of the real estate on which the crops were grown. The *Roberts* court concluded:

As alluded to by the commentators and as delineated in the UCC, only a security interest in "growing crops" must be perfected by a financing statement containing a description of the real estate. It would appear that a security interest in other subcategories of "farm products," such as severed crops, stored crops, or products of crops in their unmanufactured state, is, by negative implication, perfected without inclusion of a real estate description.

... [S]evered crops are not "growing crops," but rather are simply another subcategory of the UCC's generic collateral category of farm products, if in the farm debtor's possession. Because severed crops are not growing crops, the real estate description requirement ... is inapplicable, and in order to perfect a security interest in the severed and stored crop a financing statement does not have to contain a description of the real estate.

*Id.* at 132–33.

The *Klipfer* court expressly followed the *Roberts* decision, finding it to be "thoughtfully written, conceptually sound and highly persuasive." 62 B.R. at 295. We agree with this assessment, and we join the bankruptcy courts of Kansas and Ohio in holding that a perfected security interest in "farm products" attaches to harvested crops in the debtor's possession, even if neither the security agreement nor the financing statement contains a description of the real estate on which the harvested crops were grown.

The district court disagreed with the interpretation we now adopt because it believed that "it would be illogical for the Code to demand a description of the collateral used to secure a loan ... and then allow a creditor to take a security interest in collateral which could not even be found if searched for, because it does not yet exist in that form." In fact, the U.C.C. allows for precisely such a result by permitting creditors to obtain security interests in after-acquired property. *See* N.Y. U.C.C. § 9–204(1) (McKinney Supp.1987). By including an after-acquired property clause in the security agreement (as was done in the present case), a creditor may obtain a security interest in all manner of collateral which "does not yet exist," as long as the after-acquired collateral fits within one of the general categories of collateral described in the security agreement and financing statement.

The district court also expressed concern for the hypothetical subsequent creditor who obtains a security interest in a debtor's growing crops, believing them to be free of other liens, only to find that once the crops are harvested, they are subject to a pre-existing security interest in farm products. To a large extent, the district court's concern is alleviated by N.Y. U.C.C. § 9–312(2) (McKinney 1964 & Supp.1987), which grants a special priority to crop financers:

A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season ... takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops....

*Id.* The Code does not state expressly whether this special priority continues after the crops are harvested; however, we leave that question for another day, because we are not confronted in this case with a priority conflict between two parties with perfected security interests.

Only one secured party is before us now, with a perfected interest in respondents' farm products. The financing statements filed by the United States were sufficient to put subsequent potential creditors on notice that all of respondents' currently-

owned and after-acquired farm products—*including* harvested crops—might be subject to security interests. *See e.g., Beneficial Finance Co. of New York v. Kurland Cadillac–Oldsmobile, Inc.*, 32 A.D.2d 643, 644–45, 300 N.Y.S.2d 884, 887, (2d Dep't 1969); *Allis–Chalmers Credit Corp. v. Bank of Utica*, 110 Misc.2d 283, 285, 441 N.Y.S.2d 852, 853 (Sup.Ct.Onondaga Co. 1981) (purpose of financing statement is to alert prospective lender that conflicting security agreement may exist, and to give lender opportunity to investigate further).

## CONCLUSION

We hold that although the United States did not have perfected security interests in the crops at issue while they were growing, its perfected security interests in respondents' "farm products" automatically attached to the crops once they were harvested and stored in respondents' possession.

The decision of the district court is reversed. The case is remanded with instructions for the district court to remand to the bankruptcy court for the entry of appropriate orders designed to protect the United States' perfected security interests in respondents' harvested crops.