**BARTOLAN, INC., Plaintiff,**

**v.**

**COLUMBIAN PEANUT CO., INC., and Archer Daniel Midland, Defendants.**

**CEMACO, INC., Plaintiff,**

**v.**

**COLUMBIAN PEANUT CO., INC., and Archer Daniel Midland, Defendants.**

**Civ. Nos. 86–167–ALB/AMER(DF), 86–168–ALB/AMER(DF).**

United States District Court, M.D. Georgia, Albany/Americus Division.

Dec. 19, 1989.

James M. Skipper, Jr., Myers, Fennessy & Skipper, Americus, Ga., for plaintiffs.

Ed S. Sell, III and Brian J. Passante, Sell & Melton, Macon, Ga., for defendants.

FITZPATRICK, District Judge.

## FACTUAL BACKGROUND

Plaintiff Bartolan, Inc., (Bartolan) a Netherlands Antilles corporation registered to do business in the State of Georgia, owns approximately 517 acres of farm land located in Lee County, Georgia. In 1983 Bartolan leased its farm at a fee of $54,-000.00 annually to Leon Earl Bass who then sublet the property to Nidrah Peanut & Grain, Inc., (Nidrah). The lease agreement was subsequently extended to cover the 1984 crop year and the 1985 crop year. An addendum to the lease and sublease agreements each year set the rental fee at $54,000.00 annually. The sublease agreement was personally guaranteed by the president of Nidrah, Plez Hardin and contains language which grants Bartolan a security interest in all crops growing or to be grown on its farm land. A Uniform Commercial Code Financing Statement pertaining to the 1983 lease agreement and subsequent addendum was executed by Nidrah and presented for filing to the Clerk of Superior Court in Lee County, Georgia.

The companion case of *Cemaco, Inc. v. Columbian Peanut Co., Inc. et al.*, Civ. NO. 86–168–ALB/AMER(DF), involves essentially the same facts as *Bartolan, Inc., v. Columbian Peanut Co., Inc., et al.* Plaintiff Cemaco, Inc., (Cemaco) a Netherlands Antilles corporation registered to do business in the State of Georgia, owns approximately 600 acres of farm land located in Lee County, Georgia. On March 1, 1983, Cemaco leased its farm to Nidrah for the

purpose of growing peanuts. The lease contains a provision granting Cemaco a security interest in all crops growing or to be grown on its farm land. Pursuant to the lease, Nidrah executed a Uniform Commercial Code Financing Statement which was filed in the Lee County Superior Court Records on April 25, 1983. The lease agreement between Cemaco and Nidrah was subsequently extended to cover the 1984 crop year and the 1985 crop year. The 1985 lease extension called for an annual rent of $46,000.00 payable in two installments of $23,000.00.

Nidrah, acting as a seller and producer of peanuts, entered into a contract with defendant Columbian Peanut Company Inc., (Columbian) a wholly owned subsidiary of Archer Daniel Midland, to sell Columbian peanuts grown on the Bartolan and Cemaco farms (the farms) in 1985. Nidrah also entered into a Buying Point Agreement with Columbian. Under the terms of the Buying Point Agreement, Nidrah was to forward to Columbian contracts for the sale of peanuts and Nidrah would use its facilities as a receiving point to store peanuts purchased by Columbian until they could be shipped to processing plants. In 1985, Nidrah produced 439,309 pounds of peanuts on the Bartolan farm and 1,455,959 pounds of peanuts on the Cemaco farm, all of which was delivered to Nidrah's facilities in Leslie, Georgia. Those peanuts were then sold by Nidrah to Columbian in September and October of 1985. Nidrah did not use the proceeds from the sale of the peanut crops to Columbian to satisfy its lease obligations and to date has failed to pay Bartolan's $54,000.00 rental fee or Cemaco's $46,000.00 rental fee due under the respective 1985 lease agreements.

Plaintiffs contend that the defendant Columbian purchased the peanuts produced on their farms by Nidrah, subject to each plaintiff's statutory rent lien [1] and security interest in the peanuts. Defendants are thereby obligated, according to the plaintiffs, to satisfy the respective peanut crop liens out of Columbian's proceeds from its sale of the peanuts.

The defendants assert that they had no knowledge of the plaintiffs' security interests in the crops Columbian purchased from Nidrah nor did they have notice of the statutory liens. They argue that since Columbian purchased the crops for value and without notice, defendants are entitled to the crops free and clear of any claim in these cases as a matter of law.

## DISCUSSION

The parties in the above styled cases currently have cross motions for summary judgment pending before the court. Rule 56(c) of the Federal Rules of Civil Procedure allows for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon motion and after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A movant may discharge his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 326, 106 S.Ct. at 2554. The evidence and all factual inferences, however, must be viewed in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.,* 734 F.2d 637, 638 (11th Cir.1984).

---

**1.** The statute granting plaintiffs a lien on their tenant Nidrah's peanut crops is O.C.G.A. § 44–14–341 (1982) which reads: "Landlords shall have a special lien for rent on crops grown on land rented from them, which lien shall be superior to all other liens except liens for taxes, and shall also have a general lien on the property of the debtor which is subject to levy and sale, which general lien shall date from the time of the levy of a distress warrant to enforce the general lien."

■ The court first addresses Archer Daniel Midland Company's (ADM) motion for summary judgment. It appears from the pleadings that ADM was named as a defendant in this action solely because Columbian is its wholly-owned subsidiary. There is no allegation that ADM had any involvement in the underlying transactions that form the bases of the two suits nor are there any material issues in dispute as to ADM. Defendants' brief makes a proper characterization in stating that the only legal questions in this case are with respect to the liability of Columbian to the plaintiffs by virtue of Columbian's purchase of the peanuts grown on the plaintiffs' farms. Accordingly, the court DENIES plaintiffs' summary judgment motions against ADM and grant ADM's summary judgment motion against Bartolan and Cemaco.

Defendant Columbian insists that as a matter of law it cannot be held liable for the plaintiffs' liens because Columbian purchased the crop in question from Nidrah for value and without valid notice of plaintiffs' respective security interests or liens. Plaintiffs contend that Columbian did, as a matter of law, purchase the peanut crops with notice of their security interests and liens because plaintiffs filed a Uniform Commercial Code Financing Statement which gave notice to the world that each plaintiff had a lien and a secured interest in the crops grown on its farm. Defendant Columbian counters that plaintiffs' financing statements failed to give legal notice to any third parties because the statements were improperly filed.

The law applicable to the filing of plaintiffs' financing statements is O.C.G.A. § 11–9–401(1) (1982) which reads as follows: "The proper place to file in order to perfect a security interest ... [w]hen the collateral is crops growing or to be grown, ... [is] in the office where a mortgage on real estate would be filed or recorded; ...." In this case the proper place would be in the office of the Clerk of Superior Court in Lee County, Georgia, which is where the plaintiffs filed their financing statements.

Defendant Columbian asserts that the plaintiffs' U.C.C. Financing Statements were improperly filed because the statements were not recorded in the same books where deeds and mortgages are indexed pursuant to O.C.G.A. § 11–9–401(1) (1982). That argument by the defendant is simply without merit. The law in no uncertain terms states that "[p]resentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article." O.C.G.A. § 11–9–403(1) (Supp.1989). The plaintiffs did all they needed to do to file their financing statements and thus perfect security interests in the crops purchased by Columbian from Nidrah.[2] The official comment to the Uniform Commercial Code's § 9–407(1) states:

> Note, however, that under Section 9–403(1) [analogous to O.C.G.A. § 11–9–403(1)] the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

The case of *Pease & Elliman Realty Trust v. Gaines*, 160 Ga.App. 125, 286 S.E.2d 448 (1981), leaves no doubt that the Georgia Judiciary's statutory interpretation of O.C.G.A. § 11–9–403(1) is guided by the official comment to U.C.C. § 9–407(1). After affirming that presentation to the office of the clerk constitutes a proper filing, the court in *Gaines* ruled that the proper instrument filed for record in the proper place is effective against third persons without notice, even if the clerk improperly recorded it. *Gaines*, 160 Ga.App. at 128, 286 S.E.2d at 451.

■ The uncontroverted facts of the case at bar warrant a ruling similar to the one handed down in *Gaines*. Even if the

2. A secured creditor perfects its security interest by filing a properly executed financing statement. *See* O.C.G.A. § 11–9–302 (1982).

defendant did not have actual notice of the financing statement because the clerk incorrectly recorded it, the plaintiffs' filing of their financing statement in the proper place, Lee County, Georgia, gave the defendant legal notice of the plaintiffs' security interests and liens in the crops defendant purchased.

Defendant Columbian filed a supplemental brief in which it proposes an alternative basis for a finding that the plaintiffs' filing of financing statements in Lee County failed to provide legal notice to Columbian. It is argued by the defendant that the case of *United States v. Smith*, 832 F.2d 774 (2nd Cir.1987), clearly demonstrates that the crops at issue were not "growing or to be grown" at the time they were sold by Nidrah to Columbian but were instead "farm products;" which means that the only proper place for plaintiffs to file their U.C.C. Financing Statements in order to perfect their security interests in these "farm products" (and to place the world on notice) would be a filing in Sumter County, Georgia, where Nidrah's principal place of business was located. Defendant bases that argument on the assertion that the 2nd Circuit Court of Appeals, interpreting U.C.C. language similar to that adopted by Georgia, held in *Smith*, that the filing requirements for the perfection of a security interest in growing or to be grown crops, as opposed to harvested farm products, differ such that a party may have a properly perfected security interest in growing or to be grown crops which subsequently becomes unperfected when the crops are harvested and reclassified as farm products. This court finds that defendant has misinterpreted the holding of *Smith;* a case which this court believes lends no support to defendant's assertion that under Georgia law a valid financing statement on growing crops ceases to exist once the crops are harvested.

In *Smith*, the United States Government had entered into a security agreement with the respondents which granted the Government a security interest in " '[a]ll crops ... now planted, growing or grown, or which are hereafter planted' on certain designated parcels of real estate [and] other farm products and supplies, now or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto." *Smith*, 832 F.2d at 774. The Government conceded that under N.Y.U.C.C. § 9–402, [a statute analogous to O.C.G.A. § 11–9–402 (Supp.1989) ], it did not have a perfected security interest in respondents' crops while they were growing because the Government had failed to meet the requirement of N.Y.U.C.C. § 9–402 by including in its statement a description of the real estate. The Government argued, however, that based on its perfected security interests in the after-acquired farm products of the respondents, once the growing crops were harvested and thereby qualified as farm products, the Government's perfected security interests in the after-acquired farm products of the respondents automatically attached to respondents' harvested crops.

The court of appeals in *Smith* had to decide if the district court was correct in essentially ruling that the only way for the Government to perfect its security interest in respondents' crops was to meet the filing requirements for growing crops (compliance with N.Y.U.C.C. § 9–402) even though respondents' crops had been harvested and therefore could be classified as farm products. In reaching its decision, the 2nd Circuit Court of Appeals first decided that growing crops are a subcategory of farm products that have certain requirements that must be satisfied before one can perfect a security interest in them. The court went on to find, however, that once growing crops are severed, they then qualify as farm products which one can perfect a security interest in by meeting the statutory requirements for perfecting a security interest in farm products. In accord with its findings, the court of appeals reversed the ruling of the district court and held that "although the United States did not have perfected security interests in the crops at issue while they were growing, its perfected security interests in respondents' [after-acquired] 'farm products' automatically attached to the crops once they were harvest-

ed and stored in respondents' possession." *Smith,* 832 F.2d at 778.

The *Smith* case neither states nor infers that had the Government perfected its security interest in the growing crops, it would have nevertheless had to file an additional financing statement to "re-perfect" its security interest in the growing crops once they were severed and became farm products. The court of appeals in fact implicitly recognized the continued validity of a security interest in growing crops once they are harvested by acknowledging the existence of a possible priority contest between a creditor with a security interest in growing crops and a creditor with a pre-existing security interest covering the same crops once they are harvested and become farm products.[3]

■ Despite the defendant's citation of *Smith* and other cases as support for its position, the court has come across nothing which indicates that under Georgia law a perfected security interest in growing crops becomes invalid once the crops are harvested. The same cannot be said for the proposition that a perfected security interest in growing crops retains its validity even though the growing crops are subsequently harvested. Section 11–9–401(3) of the Georgia Code Annotated states that "[a] filing which is made in the proper place in this State continues effective even though the debtor's residence or place of business *or the location of the collateral or its use,* whichever control the original filing, is thereafter changed." O.C.G.A. § 11–9–401(3) (1982). (Emphasis added).

■ Section 11–9–401(3) is interpreted by this court to mean that factors of the collateral which initially establish the applicable filing requirements can change after a proper filing without affecting the continued validity of the original filing. Accord-

ingly, the court finds that plaintiffs' properly filed their U.C.C. Financing Statements thereby perfecting security interests which remained effective even though the crops at issue were harvested. Consequently, the court further finds that, as a matter of law, defendant Columbian purchased the crops in question with notice of plaintiffs' security interests and liens on the crops thereby making defendant liable to Bartolan for an amount of $54,000.00 and liable to Cemaco for an amount of $46,000.00. The defendant is not, however, liable as a matter of law for punitive damages and expenses of litigation.[4]

■ The final argument put forth by the defendant is that the plaintiffs' are not entitled to summary judgment because material issues of fact exist concerning the assertion of Columbian's defenses of waiver, laches, and equitable estoppel. "When a motion for summary judgment is made and supported as provided in this rule [Fed. R.Civ.P. § 56(e)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. § 56(e). Defendant's primary assertion, as to its defenses of waiver, laches, and equitable estoppel, centers on an allegation that plaintiffs waited seventy-five (75) days before proceeding with any actions to collect their rental fees. Plaintiffs do not dispute that fact and argue that they were well within their rights to do so. The court finds that the defendant puts forth no other evidence or allegations that place any material issues of fact in dispute that would support or make out elements of its asserted defenses.

---

3. *Smith,* 832 F.2d at 777.

4. Two other contested issues in this case are whether the plaintiffs' statutorily created landlord liens are valid against the defendant without the plaintiffs taking any action to execute them and whether or not the knowledge of Nidrah is imputable to Columbian. Those issues deal with alternative ways in which the

defendant allegedly received notice of plaintiffs' security interests and rent liens in the 1985 peanut crops Columbian purchased from Nidrah. The court need not address those issues since it has already found that defendant did have notice of plaintiffs' security interests and rent liens.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions for summary judgment as to the issue of whether defendant Columbian is liable to plaintiffs for the amount of their respective rent liens is hereby GRANTED as the court finds that there are no issues of material fact concerning that question and plaintiffs are entitled to judgment as a matter of law. For reasons stated above, the court also hereby GRANTS defendant Archer-Daniel-Midland's motion for summary judgment and hereby DENIES defendant Columbian's motion for summary judgment.

SO ORDERED.