In re William A. WRIGHT and
Diana L. Wright, Debtors.

Bankruptcy No. 94–13318–7.

United States Bankruptcy Court,
W.D. Wisconsin.

Dec. 1, 1995.

Michael D. Schwartz, Minneapolis, MN, for Dairy State Bank.

Steven Pray O'Connor, Assistant U.S. Attorney, Madison, WI, for CFSA.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

Presently before the Court is Dairy State Bank's motion to clarify priority of security interests, which has been objected to by Consolidated Farm Service Agency ("CFSA").[1] The motion is the result of a dispute over the proceeds of an auction of the debtors' farm equipment which was held in December of 1994. Dairy State Bank contends that it is entitled to $4,940.76, plus interest and collection costs, from the auction proceeds. The basis of the bank's contention is its claim that it holds a purchase money security interest in a tractor which was sold at the auction. CFSA held a blanket security interest in the debtors' property and presently holds the auction proceeds. It contends that as the bank's security interest was never perfected, the bank is an unsecured creditor and not entitled to any of the auction proceeds. Dairy State Bank is represented by Michael D. Schwartz of Schwartz, Wandling & Bergeson, P.A., and CFSA is represented by Assistant U.S. Attorney Steven Pray O'Connor.

The parties agree that on April 6, 1994, Dairy State Bank lent the debtors approximately $10,000.00 to acquire the tractor in

---

1. In the government's never-ending quest to "reinvent" itself, the agency which was once the Farmer's Home Administration and then Rural Economic Community Development Services underwent yet another face-lift in the course of these proceedings. Although all prior pleadings referred to the agency as Rural Services, the Court will use its current *nom de plume* for purposes of this decision.

question. If properly perfected, the bank's security interest in the tractor would have had purchase money status, and the bank's claim would have been superior to that of CFSA. *See* Wis.Stat. § 409.312(4) ("A purchase money security interest in collateral other than inventory has priority ... if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter."). The problem is that for some unknown reason the bank's security interest was never recorded. Because the security interest was never recorded, CFSA contends that it was never perfected so as to achieve priority status under § 409.312(4).

The bank is unable to explain why the security interest was not recorded, but nonetheless contends it took every step necessary for perfection. According to the bank, on April 7, 1994, the day after it made the $10,000.00 loan to the debtors, a loan officer mailed a UCC–1 form and the $8.00 filing fee to the Polk County Register of Deeds to record its security interest in the tractor. The bank does admit that it took no other action in connection with the recordation of its security interest, despite the fact that the loan was apparently refinanced on May 6, 1994, September 3, 1994, and November 2, 1994. Then, on December 5, 1994, the bank received notice of an impending auction of the debtors' property. Shortly thereafter, the bank learned that the debtors had filed bankruptcy. Only after the bankruptcy filing did the bank discover that its security interest in the tractor had not been recorded.[2] The auction took place as scheduled on December 13, 1994; at the auction, the tractor was sold for $13,500.00.

The bank offers three reasons why it should receive full payment of its claim out of the auction proceeds, even though its purchase money security interest was not recorded. First, it contends that its security interest, regardless of its recordation, was properly perfected when it was mailed to the Register of Deeds. Second, it argues that CFSA would be "unjustly enriched" if its security interest is not enforced. Third, it argues that CFSA's security interest should be equitably subordinated to the bank's security interest, again apparently because of the unfairness of the situation. CFSA's response to these contentions is simple—it argues that because the bank failed to perfect its purchase money security interest, or any security interest at all, CFSA's blanket lien attached to the tractor. CFSA further submits that it has done nothing to justify resort to the equitable remedies the bank suggests the Court should fashion.

■ The bank's first argument centers around its contention that it complied with Wis.Stat. §§ 409.302(1) and 409.401(1)(a) by mailing the UCC–1 form to the Register of Deeds office, together with the required fee. Section 409.302(1) requires the filing of a financing statement for perfection of a security interest, and § 409.401(1)(a) requires that to be effective the financing statement must be filed in the office of the register of deeds in the county of the debtor's residence. In support of its argument that mailing the UCC–1 form constitutes compliance with these sections, the bank cites Wis.Stat. § 409.403(1). This section defines filing as the "presentation for filing of a financing statement and tender of the filing fee."[3]

**2.** Apparently, under the bank's internal policy regarding uncashed checks, the loan officer was not required to investigate the Register's failure to cash the $8.00 check for 180 days. The bank seems to believe that compliance with this informal procedure was sufficient to verify perfection of its security interest, and that it did not need to take any further steps to assure that the UCC–1 form actually arrived at the Register of Deeds' office. However, compliance with this procedure would mean that the bank should have discovered the problem by *October 7, 1994* (180 days from April 7, 1994, the day the form was allegedly sent). The bank has not explained why it failed to discover or investigate the situation in the two months prior to the debtors' bankruptcy filing in December of 1994.

**3.** The full text of § 409.403(1) is as follows:

Presentation for filing of a financing statement and tender of the filing fee constitutes filing under this chapter unless the filing officer refuses to accept the statement under § 409.402(3m). Presentation for filing of a financing statement and acceptance of the statement by the filing officer constitutes filing under this chapter.

Oddly enough, the first and second sentences of this section appear to be in conflict, as the second appears to add the requirement that the

The bank argues that it took every step necessary for perfection of its purchase money security interest once it mailed the UCC–1 form. It also cites several Wisconsin cases for the proposition that Wisconsin law does not penalize a creditor when the creditor has taken reasonable steps to file its security interest and is not at fault for the late filing. *See Boston Old Colony Ins. Co. v. Int'l Rectifier Corp.*, 91 Wis.2d 813, 284 N.W.2d 93 (1979); *Hamilton v. Dep't of Industry, Labor, and Human Relations*, 56 Wis.2d 673, 203 N.W.2d 7 (1973).

In *Boston Colony*, the plaintiff (and appellant) sought appellate review of the trial court's dismissal of its action. Under state law, the plaintiff had until December 7, 1978, to file a notice of appeal. The attorney for the appellant hand-delivered the notice of appeal and all required fees to the deputy clerk of courts on December 1, 1978. It was uncontested that the deputy clerk took possession of the documents, placed them on her desk, and informed the attorney that no further action was necessary on his part. However, the notice of appeal was not stamped filed until December 11, 1978, and the Wisconsin Court of Appeals dismissed the appeal as untimely. The Wisconsin Supreme Court reversed.

In the course of its opinion, the Wisconsin Supreme Court was required to determine what constitutes the "filing" of a notice of appeal, and examined case law in several other areas of the law before deciding that a document is "filed" when "physically handed to and accepted by the clerk." 91 Wis.2d at 818, 284 N.W.2d 93. The court stated:

> When the claimant has delivered his claim for a lien to the clerk and left it with him to be filed, he has done all he is required to do—all he possibly can do—to secure his rights, and he will not be prejudiced by the neglect of the clerk to perform in respect to its duty as directed by the statute....

*Id.* at 819, 284 N.W.2d 93 (*quoting Goodman v. Baerlocher*, 88 Wis. 287, 298, 60 N.W. 415 (1894)). In sum, after a thorough examina-

tion of Wisconsin law and cases from other jurisdictions, the court concluded that a notice of appeal was "filed" when physically delivered to the clerk, and that an appellant should not be penalized by an oversight beyond its control. *Id.* at 823–24, 284 N.W.2d 93.

Similarly, in *Hamilton*, the appellant sought review of an order of the Wisconsin Department of Industry, Labor, and Human Relations. The lower court dismissed the petition on the grounds that the request for review had not been filed within the required thirty-day period. The relatively confusing procedural history of the case is irrelevant, as the only aspect of the case which might impact this matter is the holding. The court found that the clerk abused his ministerial powers in returning the petition to the appellant in an untimely manner for correction of a minor detail. The court found that the appellant had been diligent in seeking review of the agency decision, had filed the request for review in a timely manner, and should not suffer as a result of the clerk's failure to perform his duties. *Hamilton*, 56 Wis.2d at 683, 203 N.W.2d 7.

Although the cases the bank has cited do not involve the filing of a financing statement, the bank contends that the decisions are analogous to the present case. Indeed, a review of these cases indicates that Wisconsin lien law may well consider "filing" complete when the item is delivered to the appropriate office. For example, in *Boston Colony* the court stated that its decision is "consistent with case law in Wisconsin concerning filing of mortgages [and] lien claims." 91 Wis.2d at 822, 284 N.W.2d 93. Similarly, in *Hamilton* the court cited favorably the case of *Lang v. Menasha Paper Company*, 119 Wis. 1, 96 N.W. 393 (1903), which involved the "filing" of a lien claim. 56 Wis.2d at 683–84, 203 N.W.2d 7. Although there does not appear to be any Wisconsin law directly on point, the Court's examination of the UCC law of other jurisdictions indicates that delivery to the appropriate office may constitute

---

financing statement be "accepted" before it may be considered to have been filed. However, for reasons which are more fully discussed below, the Court need not consider whether "accep-

tance" by the filing officer is required, or if presentation alone is sufficient to constitute filing.

"filing" of a financing statement. Under these authorities, presentation of a financing statement, together with the tender of the proper fee, is generally considered the legal equivalent of filing. *Chemical Bank v. Barron*, 663 F.Supp. 367, 369 (S.D.N.Y.1987); *see also In re Bufkin Bros., Inc.*, 757 F.2d 1573, 1578–79 (5th Cir.1985); *Bartolan, Inc. v. Columbian Peanut Co., Inc.*, 727 F.Supp. 1444, 1447–48 (M.D.Ga.1989).[4]

The problem with the bank's argument is that the cases it cites, together with the other cases cited above, all involved situations in which the office in question *actually received* the item, and for some reason failed to file or process it in a timely fashion. Indeed, the decision in *Boston Colony* is quite instructive in this regard. The court stated repeatedly that "physical delivery" constituted filing, and that upon such delivery the party should not be penalized by the errors or omissions of the clerk. 91 Wis.2d at 819, 284 N.W.2d 93. The decisions in *Barron*, *Bufkin Bros.*, and *Columbian Peanut* were also all based upon the position that once the filing officer receives the financing statement, the secured party is not obligated to verify that it is properly recorded. *Barron*, 663 F.Supp. at 369; *Bufkin Bros.*, 757 F.2d at 1578; *Columbian Peanut*, 727 F.Supp. at 1447. Here there is no evidence that the Register of Deeds actually received the financing statement, or that it was negligent in processing it. Accordingly, the success of the bank's argument hinges upon whether merely mailing the financing statement constituted presentation or delivery of the financing statement to the Register of Deeds within the meaning of Wis.Stat. § 409.403(1).

■ In an attempt to avoid the argument that it must demonstrate that the Register of Deeds actually received the document, the bank cites both *State ex rel. Flores v. State*, 183 Wis.2d 587, 516 N.W.2d 362 (1994) and *Mullen v. Braatz*, 179 Wis.2d 749, 508 N.W.2d 446 (Wis.Ct.App.1993). These cases articulate the long-standing "presumption of receipt" which occurs when a document is mailed. *Flores* involved a criminal defendant who denied receiving a letter containing certain information relevant to his appeal. The court stated that "it is well established that the mailing of a letter creates a presumption that the letter was delivered and received." 183 Wis.2d at 612, 516 N.W.2d 362. Once there is evidence of mailing, a rebuttable presumption is raised which requires the other party to demonstrate "credible evidence of non-receipt." *Id.* at 613, 516 N.W.2d 362. Similarly, in *Mullen* the court dealt with the mailing of a notice of appeal. Again, the court held that there is a rebuttable presumption of receipt which may be rebutted only by credible evidence that the item was not received. 179 Wis.2d at 753, 508 N.W.2d 446. The bank submits that this presumption can be substituted for evidence of actual receipt, thus satisfying the conditions set forth in *Boston Colony* for "filing" of the financing statement.

Wisconsin has not addressed this novel interpretation and analysis of Wis.Stat. § 409.403(1). Further, the case law regarding whether mailing satisfies the presentation requirements of the UCC is quite sparse. The Court was able to locate only three cases which discussed the issue. In *Peoples Nat'l Bank of Rockland County v. Weiner*, 129 A.D.2d 782, 514 N.Y.S.2d 772 (App.Div.1987), a creditor brought an action against an attorney for malpractice as a result of the attorney's failure to file a financing statement. The attorney argued that

---

4. Interestingly, Wis.Stat. § 409.403(1) is different than the standard UCC text considered by those jurisdictions which have held that filing is complete upon delivery. For example, in *Barron*, the New York version of the statute provided that "presentation for filing of the financing statement and tender of the filing fee *or* acceptance of the statement by the filing officer constitutes filing...." 633 F.Supp. at 369 n. 3. (Emphasis added). As is pointed out in footnote 3, *supra*, Wis.Stat. § 409.403(1) contains what may be an internal conflict, as the first sentence provides

that presentation constitutes filing, while the second sentence provides that presentation "and" acceptance by the filing officer constitute filing. It is unclear what the Wisconsin legislature intended by this variation from the standard text of Article 9, but arguably this variation militates against acceptance of Dairy State Bank's arguments. However, for the purposes of this decision the Court can presume that presentation alone constitutes filing, as the additional requirement of acceptance by the filing officer does not change the result.

mailing the instrument should constitute presentment, thereby satisfying § 9–403(1) of the UCC and resulting in the perfection of the security interest. The court concluded that

> [m]ere mailing does not constitute "[p]resentation" to the filing officer pursuant to UCC 9–403(1).... *[A] financing statement must be received by the filing officer before it is presented and ... evidence of receipt is required.* UCC 9–403(1) states that "presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this Article." The defendants erroneously equate "acceptance" with "receipt" and argue that receipt is not required because either presentation or receipt constitutes filing. The defendants confuse the filing officer's performance of duty, i.e., acceptance, with receipt of the document. Acceptance is not the equivalent of receipt. Acceptance is not necessary to filing while receipt is.

514 N.Y.S.2d at 773–74 (emphasis added).

Much like the bank in the present case, the defendants in *Weiner* also argued that the "presumption of receipt" should satisfy the evidentiary requirement that they demonstrate receipt by the filing officer. The court rejected this argument for two reasons. First, in order to establish priorities, "the time as well as the fact of receipt must be established." *Id.* Since the purpose of § 9–403(1) is not only to absolve the secured party of responsibility for the errors or omissions of the filing officer, but also to render certain the time when filing occurred, filing must occur upon receipt, not mailing. *Id.*, 514 N.Y.S.2d at 774–75. Second, the court rejected the proposed use of the presumption of receipt because it would conflict with the equally valid presumption that governmental officers will perform their duties. In other words, in the absence of evidence that the filing officer failed to perform his or her duty, there is a conflict in presumptions and both should be disregarded. *Id.* at 774.

The court in *In re Enos*, 185 B.R. 388 (Bankr.D.Mass.1995), cited *Weiner* when it ruled that "the presumption of mail delivery cannot satisfy the presentation requirement of [§ 9–403(1) ]." *Id.* The court held that there must be more evidence than a mere assertion of mailing to constitute presentation; for example, a return receipt. *Id.* at 388–89. Anything less, the court stated, "would have a significantly adverse effect on the notice system of the Uniform Commercial Code." *Id.* at 389. In the course of its decision, the *Enos* court also cited the only other case this Court found on the issue, *In re Flagstaff Foodservice Corp.*, 16 B.R. 132 (Bankr.S.D.N.Y.1981). *Flagstaff* is not directly on point, although the court in that case did hold that mail delivery was sufficient for "presentation" under § 9–403(1) of the UCC where there was evidence of actual receipt. The creditor produced a return receipt to demonstrate that the clerk actually received the item. *Id.* at 135.

In truth, these authorities are in accord with *Boston Colony* and *Hamilton*. All would require proof of actual receipt, or "physical delivery," of the financing statement. *Boston Colony*, 91 Wis.2d at 819, 284 N.W.2d 93; *Weiner*, 129 A.D.2d 782, 514 N.Y.S.2d at 773–74. Only then is the creditor absolved of responsibility for the filing officer's failure to file the statement in a proper or timely fashion. *Boston Colony*, 91 Wis.2d at 819, 284 N.W.2d 93; *Enos*, 185 B.R. at 388–89. Under the bank's proposed use of the "presumption of receipt," it need not satisfy the essential condition precedent for the relief it seeks. Instead, it offers nothing more than an assertion of mailing, not delivery, and it offers no evidence whatsoever that upon receipt the Register of Deeds mishandled the financing statement. In essence, the bank replaces fact with presumption, both of receipt and of mishandling. This analysis is simply inconsistent with the case law.

Presupposing that mere "presentation" constitutes filing under Wis.Stat. § 409.403(1), the Court agrees with the decisions in *Weiner*, *Enos*, and *Flagstaff* that something more than a mere assertion of mailing is required to prove that the financing statement actually arrived at the appropriate office. Neither *Boston Colony* nor *Hamilton* justifies the result requested by the bank, as these cases require "physical

delivery" of the item to the filing officer. In the present case, the bank's suggestion that the financing statement was received is nothing more than an inference. It is also possible that the item was lost in the mail, or that the loan officer is mistaken in his recollection that it was mailed. There is no evidence of actual receipt or dereliction of duty by the Register of Deeds, and the bank must demonstrate at least receipt to satisfy the filing requirement. By failing to assure delivery, the bank cannot claim to have "presented" the financing statement to the Register within the meaning of § 409.403(1).[5] Accordingly, the bank's first argument must fail.

■ In its second argument as to why it should receive payment from the auction proceeds, the bank suggests that CFSA would be "unjustly enriched" if the Court does not grant it an equitable lien on the sale proceeds. Unjust enrichment is an equitable doctrine which requires proof of three things: (i) that a benefit was conferred upon another party; (ii) the other party had an appreciation or knowledge of the benefit; and (iii) circumstances make it inequitable for the other party to accept or retain the benefit without payment of its value. *Puttkammer v. Minth*, 83 Wis.2d 686, 266 N.W.2d 361 (Wis.1978). The bank submits that it has satisfied these requirements for unjust enrichment in the following respects. First, it suggests CFSA received a "benefit" as a result of the bank's loan to the debtors since CFSA will receive the excess sale proceeds. Second, it asserts CFSA knew or was aware that the benefit was being conferred. Third, it argues that it would be "unjust" to permit CFSA to retain all of the proceeds because the bank took every step necessary to perfect its security interest.

■ In essence, the bank suggests that because CFSA's general position improved as a result of the bank's failure to perfect its security interest, CFSA is unjustly enriched. The bank, however, is incorrect in its assertion that it meets the *Minth* standards for unjust enrichment. As a legal theory, unjust enrichment is premised upon the "universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust." *Id.* at 689, 266 N.W.2d 361. A careful reading of the case reflects that where, as in this case, the complaining party did not intend to confer the alleged benefit directly upon the party it now seeks to bind, that party must have ordered or ratified the benefit.

■ For example, in *Minth* the court discussed the situation in which work is performed by a contractor for a tenant. For the contractor to successfully argue that *the landlord* was unjustly enriched, the contractor must demonstrate that the landlord ordered the work, ratified the work after it was performed, or otherwise promised to pay the contractor. 83 Wis.2d at 694, 266 N.W.2d 361. Furthermore, it is not enough to establish that a benefit was conferred; it must be inequitable or unjust for the benefitted party to retain the benefit without restitution. *Id.* at 690, 266 N.W.2d 361. Here, the bank can argue only that CFSA knew, or should have known, of the existence of its loan to the debtors. That is a far cry from what must be shown to demonstrate unjust enrichment.

Although CFSA was apparently aware of the bank's loan to the debtors, and the loan clearly increased the debtors' assets to the extent of the tractor purchased with the loan proceeds, there really is no basis for finding unjust enrichment in this case. CFSA was

---

5. Although the bank suggests it could have done no more to assure delivery, a number of steps likely would have sufficed, such as sending the item by certified mail or making a telephone call to verify delivery. Clearly, the bank's own internal check verification process failed to alert it to the problem. *See* footnote 2, *supra*. However, it must be remembered what is required, and what is not. The bank did not need to assure proper *recordation*, merely proper delivery. Once the financing statement actually gets to the Register of Deeds, a creditor may be absolved of responsibility for proper recordation. *Bufkin Bros.*, 757 F.2d at 1578. At one point, CFSA requested a hearing on the issue of receipt if the Court concluded that the presumption of receipt, together with its burden of demonstrating that the item did not arrive, was applicable to this case. As the Court has concluded that physical delivery and actual receipt are required, and the bank has not alleged that the financing statement was in fact received, no hearing is necessary on this issue.

not responsible for the bank's failure to perfect its security interest, and the basic tenet of secured transactions is that a failure to perfect renders the asset available to subordinate lienholders. The bank conferred no benefit directly on CFSA, and CFSA did not stand by and blindly accept benefits to which it was not entitled. In the absence of appropriate action by the bank to perfect its security interest, it cannot contend that CFSA was unjustly enriched by the mere operation of law. *Minth,* 83 Wis.2d at 689, 266 N.W.2d 361.

For the same reason, the Court must reject the bank's final argument, as there is no basis for equitably subordinating CFSA's lien to the bank's unperfected security interest. While the bank may be correct that equitable subordination no longer requires proof of inequitable conduct, *see Matter of Virtual Network Services Corp.,* 902 F.2d 1246, 1249–50 (7th Cir.1990), the simple operation of commercial law is not sufficient justification for such subordination. Even if the former requirement of inequitable conduct is eliminated, there must still be an examination of the relative equities to determine whether equitable subordination is appropriate. *Id.* at 1250; *see also Burden v. U.S.,* 917 F.2d 115, 119 (3rd Cir.1990).

Claims should only be subordinated to the extent necessary to offset any injury to the debtors and their creditors. *In re Cilek,* 115 B.R. 974, 999 (Bankr.W.D.Wis. 1990). Here the only harm was the result of the bank's own failure to assure delivery of its financing statement to perfect its security interest. The bank now seeks to have this burden lifted from its shoulders, but it is not appropriate to require CFSA to surrender the rights it acquired in the ordinary course. Although it is unfortunate that the bank did not perfect its purchase money interest, such failures are a fact of business life. There is no basis for finding that the bank is other than a general unsecured creditor holding an unperfected security interest, and the bank's last basis for claiming a portion of the auction proceeds must fail.

Accordingly, Dairy State Bank's request for an order establishing it as a first priority secured creditor and directing payment of its claim from the auction proceeds presently held by Consolidated Farm Service Agency, as sought in its motion to clarify priority of security interests, must be denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.